THE BATH SOUTH CAROLINA PAPER CO. v. LANGLEY.

SAME v. SAME.

1. Findings of fact by the Circuit Judge in a law case (a jury being waived) cannot be reviewed on appeal.
2. Where parties take possession of property, purchased by them at a sheriff's sale, under circumstances that induced a Court of Equity from considerations of public policy, to set the sale aside (as in *Barrett* v. *Bath Paper Company*, 13 S. C., 128), the sale cannot be said to have been void, and the purchasers *tort feasors*, nor can they be regarded like to trespassers taking possession *vi et armis*, but their relation to the execution debtor is like to that of trustee to *cestui que trust*.
3. Whether questions of rents and profits, and of damages for detention and waste, which might have been, but were not, raised between co-defendants, in the case of *Barrett* v. *Bath Paper Co.*, *supra*, are *res judicata*—discussed, but not decided.
4. A trustee is bound to the exercise of only ordinary care over the property of the *cestui que trust* in his possession, and cannot be charged with rents and profits which he did not, and could not, receive.
5. Where a *quasi* trustee has insured property of his *cestui que trust*, for which, being burned, he receives the insurance money, he is accountable for the amount so received, less his payments in effecting and collecting the insurance.

Before HUDSON, J., Aiken, October, 1884.

These were two actions by the plaintiff corporation against W. C. Langley, W. C. Sibley, J. G. Bailie, E. R. Schneider, D. B. Hack, and M. F. Foster, commenced in the spring of 1880. They are a sequel to the case of *Barrett* v. *Bath Paper Company*, 13 S. C., 128. A jury trial was waived and all the issues of law and fact were referred to John T. Rhett, Esq., "for trial and determination." After taking the testimony and hearing arguments, the referee made a very carefully prepared report, in which, after full discussion, he announced the following conclusions:

MATTERS OF FACT. 1. I find that the rental value of the property is twelve thousand dollars annually. That the time for which the defendants are liable, if liable at all, is from August 6

to March 31, 1880, and the whole amount $19,800 (nineteen thousand eight hundred dollars).

2. I find that the plaintiffs did not pay the $10,000 (ten thousand dollars) counsel fees.

3. I find that the defendants were not guilty of negligence in the matter of the breaking of the dam and the injury to the wood-work connected with the pond, canal, and factory, and to the machinery.

4. I find that the injury mentioned in the foregoing finding is eleven thousand five hundred dollars expressed in money.

5. I find that the defendants were not guilty of negligence in the matter of the burning of the house, and that the value of said house is $1,500 (fifteen hundred dollars).

MATTERS OF LAW. 1. I find that the plaintiffs are barred from recovering for the use of the property by the matter being within the principles of *res adjudicata*.

2. I find that the plaintiffs cannot recover the counsel fees for the reason given in the foregoing finding.

3. I find that the defendants are not to be held to extraordinary care in the use of the property, or in the guarding of it, but that the degree of care required of them is that which a prudent man should show in the conduct of his own business in doing or omitting.

4. I find that the defendants cannot be called upon to pay the insurance money received by them to the plaintiffs.

And I find, generally, that judgment should be for the defendants.

Upon exceptions to this report by both parties, the cause came on for trial in the Circuit Court, where the following decree was rendered:

These two actions are sequels to the action of William H. Barrett and Robert A. Fleming, mortgage trustees, against the Bath South Carolina Paper Mill Company and others, including the above named defendants, reported in 13 *S. C.*, 128 to 160. From the report of that case can be gathered the nature of the controversy, its aim, purpose, and final determination, so fully and clearly that it is needless for me to indulge in repetition here. To

that report I refer for all facts therein which have any bearing on the issues arising in the two causes now under consideration. Suffice it to say that the judgment in that case was duly and fully enforced; the sheriff's title to the present defendants was cancelled, the property returned, a resale made, the proceeds distributed in accordance with said judgment, and the new purchasers let into possession.

Thereupon the Bath Paper Mill Company began these actions to recover damages for injuries done to the property by these defendants while they were in the use and occupation thereof, by negligence and remissness, and for the rents and profits thereof in the first action; and, in the second, to recover the value of a dwelling house negligently destroyed by fire. In the first action it is questionable whether the claim for rents and profits arises from the pleadings; but of this I will speak hereafter.

The issues of fact and of law were referred by this court by consent to John T. Rhett, Esq., for determination, and upon exceptions to his report the cases came on for hearing at this term of the court. The questions raised, discussed, and decided, or which must be decided, are in the first of the cases: 1. Is the plaintiff in this action estopped by the judgment in the former action? 2. Has it so framed the present complaint as to include the claim for rents and profits, or is it an action solely in *tort?* 3. To what rents and profits, if any, is the plaintiff entitled in money? 4. Did the defendants damage the property by negligence or otherwise, and if so, in what amount?

The first of these questions the referee has answered in the affirmative, holding that on the principle of *res adjudicata* the plaintiff is estopped; not that the question of rents and profits and injury to the property was actually raised, either in the pleadings or in the evidence, but that these matters of controversy were appropriate to the issue then raised, pertained to the cause of action, and should have been there raised by the present plaintiff, and that by failing to claim such relief in that action the plaintiff has waived all right to redress.

Much learning and research on the law of *res adjudicata* characterize the report of the referee and arguments of counsel on both sides. A want of time prevents me from remarking at

length upon their arguments, and from entering into a full discussion of the subject. Perhaps a conclusion can be more readily reached by applying to the pleading, evidence, and judgment in that case a few plain and common-sense principles of law.

It is conceded that the relief now asked was not demanded by the Bath South Carolina Paper Mill Company in that action in the pleadings, nor was it referred to in the evidence. That action was principally and mainly a foreclosure suit. It was only as a second cause of action that the sale to the defendants now before the court was assailed for fraud, and therefore sought to be set aside. To the action of the mortgage trustees to foreclose their mortgages, the Bath Paper Mill Company was a necessary party defendant, and the second cause of action, to wit, the fraudulent sale, could not have changed the company's relative position in. the pleadings.

It is true that the company was friendly towards the mortgage trustees throughout the whole scope of the action and extended aid freely on all their issues, but it was a proper and necessary defendant. Nevertheless the law allowed it full privilege to demand affirmative relief against its co-defendants, the purchasers at sheriff's sale, and it might very well either in the pleadings or proof, or in both, have set up the claim to rents and profits of the land in case the sale should be declared void, and could have, furthermore, demanded compensation for property wrongfully injured or destroyed. By so doing. a complete determination could have been had of every matter growing out of said alleged illegal sale betwixt all the parties to the action. Under the practice of our former Court of Equity co-defendants were frequently granted relief as against each other as matter of justice, and to avoid multiplicity of suits. See *Motte* v. *Schultz & Motte*, 1 *Hill Ch.*, 146. This was, anciently, and is now, the law in England, and was invariably followed by our Courts of Equity in proper cases. Under our code of procedure the rule has not been contracted, but if anything made more liberal.

Clearly, then, the Bath South Carolina Paper Mill Company could have obtained in that suit all the relief it demands in these two actions, as readily as can be had here. But was it necessary to make claim there, and by failing so to do has the company

waived its rights? I think not. Such a claim was not necessary to the determination of the issues of that cause. It was not a necessary incident to that suit. In England the claim for mesne profits succeeded a recovery in ejectment. So it does now in some of the United States, and so it was in our State until the action of ejectment was abolished and the action of trespass to try titles substituted, which, in the very form prescribed by statute, was an action "to try the title as well as for damage." So, too, our Courts of Equity, in every case in which by decree the possession of land was restored to its rightful owner, also ordered an accounting for rents and profits, if asked so to do. But the former action which we are considering was, as we have said, to foreclose mortgages and annul a sale in which the Bath Company was a co-defendant with the purchasers at said sale, and was not bound to set up an independent cross claim against the said co-defendent purchasers, although the right to do so existed.

The present defendants in support of the alleged estoppel rely greatly upon the case of *Martin and Walter* v. *Evans et al.*, 1 *Strob. Eq.*, 350. The case is very much like the one under consideration. The sale to Evans was set aside on the same ground on which the sale to the present defendants was declared void. The deed was cancelled, the land restored, a resale had, and the purchase money ordered to be returned to Evans. Now, in that decree leave was granted to parties to apply at the foot of the decree for any further orders which might be deemed necessary. Two years thereafter an order was applied for to compel Evans to account for the mesne profits, and was granted. The decree pronounced had been in every respect carried into effect, and the purchase money had been refunded to Evans. Now, the only difference between that case and this is, that the plaintiffs in that suit availed themselves two years after of the right to apply for an account for rents and profits, whilst in the present instance one co-defendant, as against another, prefers to bring an independent suit. In my opinion the doctrine of *res adjudicata*, waiver, or estoppel does not bar these actions, and it is so adjudged.

The next inquiry is as to the scope of the action. Is this an action to recover rents and profits as well as damage for property

negligently injured or destroyed, or is it solely an action in *tort* for negligence? It is well settled with us, that the demand for relief, the prayer of the complaint, is no part of the cause of action; but that plaintiff can and will recover such relief as the allegations of the complaint supported by proof entitle him to. The allegations of the complaint of this plaintiff are not as full and explicit as should be, but they do aver that by the wrongful possession of the defendants the Bath Company was deprived of the use and occupation of ·the premises, and the claim for damages can be as well referred to this injury as to the subsequent statement of loss from the destruction of and damage to the premises. As a general rule an action in *tort* cannot be joined with one arising in contract express or implied; but I see no reason why a plaintiff, in suing a trespasser of this kind for the use of property, cannot incorporate a claim also for its abuse and injury, or *vice versa*, in suing for the trespass why he cannot lay a count for its use. The two, the use and abuse, arise in the same wrongful possession, are inseparably connected, and may properly be embraced in one action. We hold, therefore, that the present actions are maintainable, and are not obnoxious to the foregoing legal objections, and so holding, we will proceed to consider the plaintiff's claims upon their full merits under the evidence adduced and the law applicable thereto.

Let us now examine the question of damage to the property resulting from the alleged negligence of the defendants. The breaking of the dam, the rotting of the wood-work, the rusting of the machinery, and, finally, the burning of the dwelling house, are all attributed to the negligence of the defendants. The first question in this connection to be decided is, what degree of care were the defendants liable for whilst in the possession of the property? In my opinion only for such care as a prudent man should exercise in the management of property of that description, if owned by him. It is a mistake in counsel to say that the sale to defendant was absolutely void, and hence that they were high-handed trespassers from the beginning of their possession, and stood as absolute insurers of the property, or, at least, were bound to exercise extraordinary care, and were liable for slight neglect. The sale was not void, but only voidable,

and by decree of the court was, at the suit of creditors, set aside and declared void.   Technically, in consequence of this decree, the defendants' possession was *tortious ab initio*, but they were not *tort feasors* in the sense and to the extent they would have been had they *vi et armis* ejected the rightful owners and taken violent possession.

In the Circuit decree of Judge Kershaw they are not convicted of positive moral wrong or fraud, but only of having effected the purchase of property at public auction by a combination which is contrary to established rules of public policy.   So did the Supreme Court in the case of *Dudley* v. *Odom*, disclaim all intention of imputing to Col. C. W. Dudley moral fraud or wrong in making the contract with Odom.   Therefore, I hold that these defendants whilst in possession of the property of the Bath South Carolina Paper Mill Company were liable only for ordinary care and prudence in its custody, use, and management.

Did they exercise such?   I have listened to the reading of the testimony and the very full discussion by counsel of the facts, and have since perused the evidence.   To discuss it in detail in this opinion would give to it greater length than is proper, and I will content myself with giving only my findings.   I am satisfied that the dam broke in a few days after the defendants took possession of the mill, from the defects existing at the time of and before the sale, which were unknown to the defendants, and against which they could not with ordinary care and diligence have guarded.   This care and diligence they did exercise, and yet, in open day, the dam went out.   For this loss they cannot be made to pay without violating the rules of justice and equity. The loss is a misfortune that should not fall on them, as they were in no way to blame.

But the plaintiff company's counsel say that the defendants should have repaired it.   The reply to this is, that it was an immense break, to repair which required a large outlay of money, larger, perhaps, than the defendants had in hand, and moreover, the mortgage trustees about that time began suit to foreclose and set aside the sale, in which suit the company heartily coöperated, though co-defendants with their titles thus assailed.   It is perfectly natural that the most prudent would have refrained

from expending so large a sum in repairing the dam. But suppose they had repaired the dam and gone on in spite of the cloud on their title, is it not clear that on a resale the court would have directed the outlay to be refunded to them out of the proceeds of the sale, if, as now, the proof had satisfied the court that the dam broke because of a defect existing at the time of the sale unknown to defendants, and against which their prudence and care could not and did not protect them? The loss most assuredly would have been made to fall upon the company in that event, and there we place it now without hesitation. In *Martin and Walter* v. *Evans*, the defendant Evans was without hesitation accorded the right of a *bona fide* purchaser, and in addition to the purchase money there was refunded to him compensation for improvements put upon property to which he thought he had titles.

In consequence of the breaking of the dam, the mill could not be run, and more or less decay in the wood-work occurred, and some rusting of the machinery from want of use. The evidence satisfies me that they did all in their power to prevent this, and cared for the machinery as well as any prudent owner would or could have done under like circumstances. The plaintiff has failed in so much of this action as claims damages resulting from alleged negligence of defendants whilst in the possession thereof.

Then, as to rents and profits. It is very clear that the remaining property, including the pulp mill and machinery, was useless without the water power to run it; without the pulp mill, the other machinery was useless. This pulp mill was sold subject to a heavy encumbrance. It could only be used by payment of a royalty of several thousand dollars *per annum.* The company suffered large arrears of this to accumulate prior to the sale, and, as I understand it from statements of counsel on both sides, the accrued, and annually accruing, royalty constituted a lien on the pulp mill and the machinery attached to it. This encumbrance on the pulp mill and machinery was very heavy, so much so that to remove it and to pay up one annual royalty would have required, perhaps, $10,000 or $15,000. To have repaired the dam would have cost as much or more, and for neither of these obstacles and embarrassments were the defendants responsible.

In addition to these adversities, and before they could possibly

have overcome them and begun the operation of the mills, action was brought against them, involving the title to the entire property. Under these circumstances it could not be expected that they would expend so large an amount of money to repair the works and pay the royalty when in a very short time the title might be annulled. Now, the most intelligent witnesses agree in saying, and none deny the truth of it, that without the use of the pulp mill and machinery, and without the dam, or with a dam so badly broken, the mills, as paper mills, were worthless, and the rental value was nothing. Nor is it pretended that with that property in such condition, they could have made shift and embarked in any other enterprise—certainly not one requiring water power.

The referee's estimate of the rental value of the property is based entirely upon its value in good working order. But we cannot take that basis, even if we were so authorized by the evidence to thus consider it. I could not agree with the referee, when it appears that the present plaintiff, who places so high an estimate on the annual value of the use of the property, so signally failed when using it to realize any profit therefrom. The company had not only encumbered the property with very heavy mortgage debts, but their creditors generally had been forced to put their numerous and large claims in judgment, and even their operatives remained unpaid and were forced to sue their small claims for wages and put them in judgment. All this, when, according to the evidence for the company, the machinery and property generally were in first class order. It was clearing no money, but annually getting deeper involved in debt under the company's management, with dam, machinery, and all in good condition, and yet we are asked to give judgment against the defendants for $15,000 to $20,000 for the rents and profits whilst the dam was broke, the pulp mill overburdened with accrued royalty, and all things necessarily at a stand-still; whilst a law suit, besides, was pending, involving the title. I have no hesitation in saying that the claim is not tenable, and that nothing should be recovered for rents and profits when none were made, nor could have been made and realized.

So much for the first action, except that it should be remarked

that the claim for reimbursements for counsel fees was abandoned.

As to the second action, much of what I have already remarked will apply. As well as I can find, there is nothing in the evidence sufficient to justify the conclusion that the house was burned through the negligence of the defendants. Their employee, Mr. Tyler, and his family were living in it at the time whilst he was engaged in taking care of the property for them. The account of the origin of the fire is just such as is usual in all cases of accidental burnings. No one of the inmates can tell how it occurred, nor does any one outside so testify as to fix negligence upon them. Without such evidence, the loss should not fall on the defendants.

So far as the insurance money is concerned, as hard as it may seem, the plaintiff cannot recover. With that contract the company had no connection. It was in no way privy to it. The defendants purchased and paid for the contract of insurance. The house was accidentally burned, and the insurance money was paid to them, and from them the plaintiff cannot in law recover it.

The findings of facts and conclusions of law by the referee, and the exceptions thereto not sustained herein, are overruled. It is therefore ordered and adjudged and decreed that the complaint in each of the aforesaid actions be dismissed with costs.

From this decree the plaintiffs appealed upon the following exceptions, omitting those which alleged errors in the findings of fact:

1. That his honor erred in holding as a conclusion of law, that the defendants were only bound to exercise such care as a prudent man should exercise in the management of property of that description, if owned by him; whereas, it is submitted that the law is, and his honor should have held, that the defendants were bound to exercise extraordinary care in the use of the property, and in the guarding thereof.

2. That his honor erred in holding that the sale was not void, but only voidable; whereas, it is submitted that the law is, and his honor should have held, that the sale was void *ab initio*.

3. That his honor erred in holding that the defendants were not *tort feasors* in the sense and to the extent they would have been had they *vi et armis* ejected the rightful owners and taken

violent possession; whereas, it is submitted that the law is, and his honor should have held, that the defendants were *tort feasors*, and were liable to the plaintiffs to the same extent as if they had ejected the plaintiff *vi et armis* and taken violent possession.

4. That his honor erred in holding, as a construction of Judge Kershaw's decree, that the defendants "were not convicted of positive moral wrong or fraud, but only of having effected the purchase of property at public auction by a combination, which is contrary to established rules of public policy;" whereas, it is submitted that his honor should have held, in the language of Judge Kershaw's decree as confirmed by the Supreme Court, that the sale was set aside expressly "upon the grounds of *fraud* and *public policy*." (13 *S. C.*, 149.)

 *   *    *    *    *

9. That his honor erred in holding that the rental value of the property should be estimated upon it while in its damaged condition, accruing after the defendants had taken possession, and as though the defendants had no right to use the pulp mill; whereas, it is submitted that the rule for estimating the damage is the rental value of the property at the time defendants took possession of the same.

 *   *    *    *    *

11. That his honor erred in holding that the pendency of the action, brought to set aside the sale, exonerated or in any way relieved the defendants of any responsibility; whereas, it is submitted that such action was an express notice to them of their fraudulent title, and any holding of the property thereafter was in utter disregard of plaintiffs' rights, in defiance of law, and was calculated to aggravate the unlawful acts of defendants.

12. That his honor erred in holding that the defendants were not liable for the value of the house destroyed by fire; whereas, he should have found that the defendants did not exercise extraordinary or even ordinary care in the use and protection of said house, and that the same was destroyed through negligence of the defendants and their agents, and, therefore, liable to plaintiffs for the value thereof.

13. It is submitted that the defendants held the house that was

burnt as trespassers, and, therefore, in order to excuse themselves from liability on account of the destruction, it was not enough for them to show that they did not know how the fire originated, but it was incumbent upon them to go further, and show that the fire was unavoidable, and without the least possible blame to themselves; and having failed to do so, they are liable to plaintiffs for the value of said house, and his honor erred in not so deciding.

14. It is submitted that the defendants had no insurable interest in the house destroyed by fire; that the plaintiff was the true owner thereof, and the money received by defendants on account of its destruction was held by them as trustees for the plaintiffs, and they should be made to account to the plaintiffs therefor; and that his honor erred in not so deciding.

The defendants filed the following exceptions:

1. Because, it is submitted, that in reaching the correct conclusion declared by his honor, that the complaint in the first action for $50,000 should be dismissed, he should have given, in addition to the reasons given, the reason and ground that the plaintiffs could not recover "rents and profits" or "rental value" in said action, because the complaint was simply for negligence; and it is submitted that his honor erred in not so finding.

2. Because, it is submitted, that his honor erred in not giving as another reason for the conclusion that he reached, to wit, that the plaintiffs were estopped from recovering any amount for "rents and profits" or "rental value" in this action by the proceedings in the former action of *W. H. Barrett et al.* v. *Bath South Carolina Paper Company et al.*, upon the principles of *res adjudicata.*

*Messrs. J. Ganahl, James Aldrich,* and *G. W. Croft,* for appellant.

*Messrs. Henderson Bros., C. R. Miles, Simonton & Barker,* and *D. C. Jordan,* contra.

June 19, 1885.    The opinion of the court was delivered by

MR. JUSTICE McIVER.    On August 5, 1878, a tract of land, with the improvements thereon, consisting of a paper factory and

its appurtenances, belonging to the plaintiffs, was offered for sale under various judgments against said company and bid off by the defendants through their agent, Mr. Henderson, and on the next day, titles having been made to them by the sheriff, they took possession of the property. A very short time after they went into possession of the property, to wit, August 20, 1878, the dam of the pond which furnished the water power necessary for running said factory was broken, and in consequence thereof, the property could not be and was not used by the defendants for the purposes for which it was intended.

On August 21, 1878, an action was commenced by Barrett and others against the plaintiffs herein and the defendants herein and the judgment creditors of the company with a double aspect. 1st. To obtain foreclosure of certain alleged mortgages which had been executed by the Bath Company on said property to the said Barrett and others, the validity of which was questioned; and, 2d. In the event that the court should determine that said mortgages were not valid liens as against the judgments, then for the purpose of setting aside the sale of the property to the defendants of August 5, 1878, upon the ground of fraud therein. The case was heard by Judge Kershaw, who rendered a decree that the mortgages were not valid liens, and that said sale be set aside upon the ground of constructive, not actual, fraud, and upon appeal his decree was affirmed. Thereupon the defendants, on March 30, 1880, surrendered the possession of the said property and the same was subsequently resold under the decree of Judge Kershaw. For a more full account of the proceedings in the case thus briefly referred to, reference may be had to *Barrett* v. *Bath Paper Company*, 13 *S. C.*, 128.

On April 21, 1880, and on May 4, 1880, the plaintiffs commenced the two actions, in which this appeal is taken, against the defendants, which were heard and will be considered together. By the first they seek to recover damages for the illegal seizure and detention of the said property, for the loss of the dam and injury to the wood-work and machinery; and by the second they seek to recover damages for the destruction by fire of a building on the premises, and also the sum of $1,000 received by the defendants from an insurance company for the building so

destroyed by fire during the time the defendants were in posses-
sion of the property, which insurance, it appears, was effected
by the defendants.

By consent of all parties the issues in these two actions were
referred to a referee "for trial and determination." The referee
made his report, in which he found that the claim of the plain-
tiffs in the first action for the use of the property was barred by
"the plea of *res adjudicata,* or rather the principles of it as used
in equity," and the claim for damages by the breaking of the
dam, and the consequent injury to the wood-work and machinery,
could not be sustained, because there was no proof of negligence
on the part of the defendants ; and in the second action he found
that the plaintiffs could not recover the insurance money, as there
was "no such privity between them and the defendants, or the
insurers, as entitled them to recover from the defendants the
insurance received." He therefore found generally for the defen-
dants in both of the cases.

This report, with the exceptions thereto, was heard by Judge
Hudson, who held : 1st. That "the doctrine of *res adjudicata,*
waiver, or estoppel, does not bar these actions." 2d. That as to
the claim for the use of the property, or the rents and profits
thereof, it could not be sustained, as no rents and profits were, or
could have been, realized by the defendants in the condition in
which the property was, within a very few days after they took
possession, which condition was not due to the fault of the defend-
ants. 3d. That no damages could be claimed for the loss of the
dam and the consequent injury to the wood-work and machinery,
inasmuch as this was not a consequence of the negligence of the
defendants, but resulted from causes for which they were not
responsible. In the other action he held that the plaintiffs, not
being in any way privy to the contract of insurance, could not
recover the insurance money received by the defendants. He
therefore rendered judgment dismissing the complaints in both of
the actions.

From these judgments plaintiffs appeal upon numerous grounds,
which need not be set out in detail here. Inasmuch as these
are law cases, and not cases in chancery, it is quite clear that we
have no jurisdiction to review any findings of fact, but are con-

fined solely to the correction of errors at law, assuming the facts to be as found below.   Hence it will not be necessary, or even proper, for us to consider any of the questions of fact raised by the grounds of appeal.   The defendants also, by the form of exceptions, seek to sustain the judgment below in the first action upon other grounds than those upon which it is placed by the Circuit Judge, and for this purpose contend that the plaintiffs could not recover anything for rents and profits, or for rental value, because the complaint was simply for negligence; and, 2d. That the plaintiffs were estopped from recovering any rents and profits, or rental value, by the proceedings in the former case of *Barrett* v. *Bath Paper Company* upon the principles of *res adjudicata*.

We do not propose to consider the various exceptions in detail, but simply to determine what we understand to be the fundamental and controlling questions in the case.   The fundamental idea upon which the argument for the plaintiffs rests is that the sheriff's sale on August 5, 1878, was absolutely void, and that the defendants, in taking and holding possession of the property under that sale, were *tort feasors*, or trespassers in the same sense and to the same extent as if they had taken such possession *vi et armis*.   This, we think, is not a proper view of the relations of the parties.   The sale certainly was not absolutely void; for, if so, it would not have been binding on any of the parties, and might have been so treated whenever and wherever it was encountered.   Now, it is quite clear that if the defendants had refused to comply with their bid, they could have been compelled to do so, and it is equally clear that the sale could not have been treated as a nullity in any collateral proceeding, but that it was necessary that it should be assailed and set aside in a direct proceeding, as was done.   Nor do we think that the defendants could be regarded as trespassers, taking possession *vi et armis*.   They went in peaceably, and with the acquiescence of plaintiffs, under a clear legal title; and it seems to us an entire misuse of terms to characterize them as trespassers.   If the position taken by appellants be correct, then it would follow that the sale by the sheriff and his title might have been disregarded and the defendants might have been sued for trespass the

moment they went into possession, and this surely would not be contended for.

It seems to us that the relations of the parties were more like that of trustees and *cestui que trust.* They had the legal title, and therefore the right to possession, but inasmuch as they had acquired such title under circumstances that a Court of Equity, from considerations of public policy, would not allow them to retain it, they could, by proper proceedings in that court, and only in that court, be required to surrender their title and account for the rents and profits while in possession. Upon the same principle, if one buys trust property with a knowledge of the trust, he will be declared in equity a trustee, and will be required to surrender the property, notwithstanding he may have the legal title, and account for the rents and profits. But certainly such a person could not be regarded as a trespasser, and as such liable for damages.

In this case it does not appear that the defendants personally did or said anything which vitiated the sale : in fact, it does not even appear that any of them were present at the sale. What was done was the act of their agent, Mr. Henderson, and Judge Kershaw in his decree very properly exempted him from any charge of moral wrong, and it is manifest that the Supreme Court took the same view, for their opinion rests solely upon the ground that the arrangement made by Mr. Henderson necessarily tended to chill the biddings, inasmuch as by reason of such arrangement some of the judgment creditors lost that motive to bid at the sale which otherwise would naturally prompt them to do so in order to save their debts, and thus that competition, which is the life of such · sales, was prevented. The mere fact that the defendants desired to obtain, and did obtain, the property at a price less than its real value (and this is all that the defendants can be charged with having done personally), would not have vitiated the sale; the real vice was that their agent made such an arrangement as would necessarily tend to diminish the number of bidders and thus prevent that competition which might otherwise have been naturally expected, and this from considerations of public policy the law will not permit.

It not unfrequently happens that acts involving no moral

wrong are set aside by a Court of Equity upon the ground of legal fraud, as contradistinguished from moral fraud, because they violate some settled principle of public policy. Thus a person who makes a voluntary conveyance with the most innocent, or even laudable, motives, may find such a conveyance declared fraudulent in law and set aside; or, as in *Dudley* v. *Odom* (5 *S. C.*, 131), a contract, which it was conceded violated no moral rule, was declared fraudulent, because made in contravention of a well settled principle of public policy. In such cases it would be clearly a misuse, if not an abuse, of terms, to characterize the persons who made such conveyances or contracts as *tort feasors* in the sense of those terms as used by the counsel for appellants. So here we think it is a mistake to suppose that the act of these defendants, through their agent, Mr. Henderson, was of such a character as would justify such a charge.

It seems to us, therefore, that the relation of the defendants to the plaintiffs was more like that of a trustee than a trespasser, and hence it has been argued with much force that the claim now made in the first action was a necessary incident to the former suit, and should have been there adjusted and not made the subject of a second action. It is undoubtedly true that the plaintiffs could, in the former action of *Barrett* v. *Bath Paper Company and others*, have required these defendants to account for the rents and profits, and such has been the usual practice in this State. *Martin & Walter* v. *Evans*, 2 *Rich. Eq.*, 368, and again in 1 *Strob. Eq.*, 350; *Brown* v. *McDonald*, 1 *Hill Ch.*, 297; *McDonald* v. *May*, 1 *Rich. Eq.*, 91, and other cases cited in the argument for respondents. And we see no reason why, in the same case, the defendants, by proper pleadings and proofs, might not also have been made to account for any damages done to the property by their fault or misconduct while the same was in their possession; for while it is true that a claim for damages is not ordinarily within the jurisdiction of the Court of Equity, yet where they are incidental to the other relief sought of which the court does have jurisdiction, then a Court of Equity may also proceed to award damages as ancillary to such relief, either by a reference to the master or by ordering an issue of *quantum damnificatus* to be tried by a jury. *Bird* v. *Railroad Company*, 8

*Rich. Eq.*, 46, and the authorities therein cited; *Lamar* v. *Railroad Company*, 10 *S. C.*, 476.

Courts do not try cases by piecemeal, and a Court of Equity especially delights to do full and complete justice. Thus a claim which is necessarily incident to one that has already been adjudicated cannot be made the ground of a second action, even though it may not have been considered or passed upon in the former action. A party cannot, after having obtained judgment for the principal of a note or other interest-bearing demand, bring a second action to recover the interest, even though he may have wholly omitted to claim interest in the first action, because the interest, being a necessary incident to the principal, should have been demanded in the first action, and therefore cannot be made the ground of another action. So, too, in the old action of trespass to try titles, which by the act of 1791 was substituted for the former action of ejectment, in which the party could only recover the land, and was put to his second action for the recovery of rents and profits, a party having recovered the land could not maintain a second action for rents and profits, although the act simply permitted, but did not require, such a claim to be embraced in the first action. *Sumter* v. *Lehre*, 1 *Tread. Con. R.*, 102; *Coleman* v. *Parrish*, 1 *McCord*, 264; *Lowrance* v. *Robertson*, 10 *S. C.*, 33.

It is contended, however, that in the former case the parties were different, and that the claim now sought to be set up was not a claim of the plaintiffs in that case against the defendants, but that it was a claim by one co-defendant against co-defendants. A Court of Equity takes but little note of how the parties are arrayed upon the record, whether as plaintiffs or defendants, but proceeds to determine the issues, whether they arise between plaintiff and defendant, or between co-defendants, and nothing is better settled than that a Court of Equity may render a decree in favor of one defendant against his co-defendant upon an issue growing out of the pleadings and proofs between the plaintiff and such defendants. Such a decree was rendered in *Motte* v. *Schultz* (1 *Hill Ch.*, 146), where the following language of Lord Redesdale, in *Chamley* v. *Lord Dunsany* (2 *Sch. & Lef.*, 710), is quoted with approval: "But it seems strange to object to a decree

because it is between co-defendants, when it is grounded on evidence between the plaintiffs and the defendants.    It is a jurisdiction long settled and acted on, and the constant practice of a Court of Equity; so much so that it is quite unnecessary to state any case in its support"—as well as the following words of Lord Eldon, in the same case: "When a case is made out between defendants by evidence, arising from pleadings and proofs between plaintiffs and defendants, a Court of Equity is entitled to make a decree between the defendants—further, my lords, a Court of Equity is bound to do so.    The defendant chargeable has a right to insist that he shall not be made a defendant in another suit for the same matter that may then be decided between him and his co-defendant, and the co-defendant may insist that he shall not be obliged to institute another suit for a matter which may be then adjudicated between the defendants.    And if a Court of Equity refused so to decree, it would be good cause of appeal by either defendant."

This strong and decisive language of Lord Eldon might have been applicable to the present case, if the issue now presented had been raised by the pleadings and proofs in the former case.    The real object of the former case, and the one which was effected, was to set aside the sale and restore the property to its original owner, and it may be that the claim for damages now made might have been asserted by proper pleadings and proofs in that case, but this does not seem to have been done, and, therefore, the court was not called upon to decide, and did not decide, anything in reference to the present controversy.    It is true that the Bath Company were, in the former suit, nominally arrayed on the side of defendants, yet they were really plaintiffs, desiring the same relief as the plaintiffs.    In their answer they plainly allied themselves with the plaintiffs, and expressly asked for such relief "as the nature of the case may demand, as fully and completely as if this defendant had instituted the said proceeding."

But the "nature of the case," as made by the plaintiffs in the former suit, did not embrace the demand now made, and whether the Bath Company, by joining in the demand for the relief there asked as fully and completely as if they had instituted said proceeding, were bound so to shape their pleadings and proofs as to

embrace the demand now made, is a question about which there may well be difference of opinion; and, therefore, we prefer to rest our decision in this case upon the ground upon which the judgment below was placed by the Circuit Judge, sustained, as it is, by the reasons which he has given, which need not be repeated here. The relations of the parties being such as we have indicated above, it is clear that the Circuit Judge was right as to the degree of care which the defendants were bound to exercise; and as the findings below established the fact that such care was used, there is no ground upon which the defendants could be made liable for the injury, which the property sustained without fault on their part. So, too, as to the rents and profits; the Circuit Judge having found that none were received, or could have been received, by reason of causes for which the defendants were in no wise responsible, there is no ground upon which plaintiffs can claim anything on that account.

As to the second action, we agree with the Circuit Judge in the views which he has presented, so far as the claim for damages for the destruction of the building by fire is concerned. Assuming, as we are bound to do, under the findings of fact below, that the destruction of the house by fire was not due to any negligence on the part of the defendants, they cannot be made liable for any damages occasioned thereby.

It seems to us, however, that the claim for the insurance money received by the defendants stands upon a different footing. If, as we have seen, the defendants stood in the relation of *quasi* trustees towards the plaintiffs, then the money received by them for the insurance on the house of the plaintiffs belonged, *ex æquo et bono*, to the plaintiffs. This money may be regarded as a compensation, in part, at least, for the loss of property which has been adjudged to be the property of the plaintiffs, and, therefore, in equity and good conscience, it belongs to the plaintiffs. Any other view would, contrary to well established principle, enable the defendants to make profit for themselves out of the *quasi* trust property. It is, in effect, money had and received by the defendants to the use of the plaintiffs, and, as such, recoverable by the plaintiffs, subject, however, to a deduction of all amounts

actually paid by the defendants, either by way of premiums or otherwise, in effecting or collecting such insurance.

The judgment of this court is that the judgment of the Circuit Court in the first action above considered be affirmed; and that the judgment of the Circuit Court in the second action be reversed, and that said second action be remanded to the Circuit Court for a new trial.