BLANCHARD *v.* KINGSTON.

1. LIFE ESTATES—LIFE TENANT HAS INSURABLE INTEREST.
   A life tenant has an insurable interest.

2. DEEDS—DELIVERY.
   Where the attorney who prepared a deed took it to the home of the grantor, had it signed and acknowledged, and then, without handing it to the grantor to deliver to the grantee, stated that he would have it recorded, and did so, there was a sufficient delivery.

3. REFORMATION OF INSTRUMENTS—DEEDS—CONSIDERATION—VOLUNTARY CONVEYANCES.
   A recited consideration of $1 and other valuable consideration in a deed sought to be reformed, *held*, sufficient, in the absence of evidence to the contrary, to remove the

On delivery of deed to third person or record by grantor as a delivery to grantee, see notes in 54 L. R. A. 867; 38 L. R. A. (N. S.) 941.

case from the rule that a voluntary conveyance will not be reformed.

4. SAME—MISTAKE OF SCRIVENER—EVIDENCE—ADMISSIBILITY.
   In a suit for the reformation of a deed to include two lots claimed to have been omitted by mistake of the scrivener, the testimony of the scrivener was admissible to establish the fact that he made the mistake.

5. LIFE ESTATES—INSURANCE—RIGHT OF LIFE TENANT TO INSURE FOR FULL VALUE.
   Whether a life tenant has the right to retain for himself and for his own use insurance money received by him for a total loss where he has insured the building in his own name for its full value or for a value in excess of his interest,—quære.

Appeal from Calhoun; North (Walter H.), J. Submitted January 10, 1923. (Docket No. 63.) Decided April 27, 1923.

Bill by Day Blanchard and another against Elva Kingston and others to reform a deed. From a decree for plaintiffs, defendants appeal. Affirmed.

*Edward R. Loud* and *Burritt Hamilton*, for plaintiffs.

*L. F. Humphrey* and *William E. Ware*, for defendants.

WIEST, C. J. The bill herein was filed to reform a deed, it being claimed that Fidelia Bliss, the mother of Jessie Blanchard, and now deceased, intended to convey to plaintiffs four lots in the village of Tekonsha, but by mistake of the scrivener the deed as executed covered but two of the lots. Defendants, who are heirs at law of the grantor, claimed that the lots were purchased by Mrs. Bliss with money received from insurance upon a farm house, in which property she only had a life estate and such insurance constituted a trust fund for their benefit as remaindermen and,

therefore, not only the lots conveyed to plaintiff, but also the lots sought to be brought within the conveyance, belong to them as remaindermen. It is also claimed there was no valid delivery of the deed, and if there was, there can be no reformation decreed because the deed was a voluntary one. The circuit judge entered a decree granting reformation of the deed.

All authorities hold that a life tenant has an insurable interest. The authorities are not in harmony upon the extent to which such insurance may be taken out by the life tenant, some holding it cannot go beyond the interest of the life tenant, and others that it may go to the full value of the property. If there is no obligation to insure for the benefit of remaindermen, either in the instrument creating the tenancy or under agreement with the remaindermen, then the life tenant may be the full beneficiary. By the great weight of authority insurance received by the life tenant under his own permitted contract is not impressed with any trust for the benefit of remaindermen but wholly belongs to the life tenant.

The observation in *Re Cameron's Estate*, 158 Mich. 174, that *Green* v. *Green*, 50 S. C. 514 (27 S. E. 959, 46 L. R. A. 525, 62 Am. St. Rep. 851), is a well-considered case, has not committed this court to the South Carolina doctrine that:

"Insurance money collected by a life tenant on a total loss by fire should be used in rebuilding, or should go to the remaindermen, reserving the interest for life of life tenant for him."

The *Cameron Case* went off on the finding that the insurance was taken out for the protection of the remaindermen. This finding raised a resulting or constructive trust. We have no such issue here, but only the bare legal question of whether insurance procured by a life tenant, intended to solely indemnify the life tenant, brings to the life tenant in case of a loss

a fund impressed in all instances with a trust in favor of remaindermen. The *Green Case* is not in line with the great weight of authority. See 21 C. J. p. 954, Estates, § 92; 26 C. J. p. 34, Fire Insurance, § 17; 2 Perry on Trusts (6th Ed.), § 553; 17 R. C. L. p. 642; 2 May on Insurance (4th Ed.), § 448, note (*a*); *Harrison* v. *Pepper*, 166 Mass. 288 (44 N. E. 222, 33 L. R. A. 239, 55 Am. St. Rep. 404).

As pointed out in *Spalding* v. *Miller*, 103 Ky. 405 (45 S. W. 462), the *Green Case* is based on the premise that in case of total destruction of insured property the fund from the insurance policy is substituted for the property; a view wholly at variance with the true idea that insurance is an indemnity and in no "proper or just sense the proceeds of the property." If the life tenant has an insurable interest, it is inconceivable that, when the indemnity contracted for is paid it is impressed with a resulting trust in favor of the remaindermen. What causes such a trust to arise? Not the contract of insurance, for that is a permitted personal contract between the life tenant and the insurance company. Not any obligation on the part of the life tenant to restore the property destroyed by fire, for there is no such obligation. Not the money received by the life tenant, on the theory that the same constitutes proceeds of property destroyed, for it is not such, but merely indemnity for a loss sustained. If the insurable interests of the life tenant and the remaindermen are separate and distinct, at what point do such interests unite under a personal contract for insurance by the life tenant and no insurance procured by or for the remaindermen? We hold:

"There is no legal obligation on the part of the life tenant to take out insurance on the interest of the remainderman, and insurance taken out by the life tenant must be shown to have been stipulated or intended to cover the interest of the remainderman, and,

unless such fact appears, it will be treated as a contract for personal indemnity to the life tenant, and he will be entitled to the proceeds to the exclusion of the remainderman." *Bennett* v. *Featherstone,* 110 Tenn. 27 (71 S. W. 589).

This is true even though the insurance exceeds the interest of the life tenant.

"It is a general rule that the proceeds of insurance on the interest of a life tenant belong absolutely to the life tenant, regardless of the value of the life tenancy as related to the amount of the insurance. If the amount paid more than compensates for the interest, that is a matter between the life tenant and the company, in which the insured has no interest." 4 Cooley's Briefs on Insurance, p. 3689.

In *Convis* v. *Insurance Co.,* 127 Mich. 616, the insurance was taken out by the life tenant under agreement with reversioners.

It is claimed there was no delivery of the deed because the attorney called upon to prepare it took the deed to the home of the grantor, had her sign and acknowledge it and then, without handing it to the grantor to hand to the grantees, stated he would take the deed and have it recorded, and did so. This was agreeable to the grantor and the grantees, and was a good delivery. We smile now over the old-time formality of livery of seizin, and it will hardly do to hold that, because the deed did not travel in a circle from the scrivener to the grantor and from the grantor to the grantees, and from them back to the scrivener, the purpose of the grantor stands defeated. We are of opinion that a sufficient consideration was established for the deed to remove the case from the rule that a voluntary conveyance will not be reformed. The deed carries on its face an acknowledged consideration of "one dollar and other valuable consideration." This, in the absence

of any showing to the contrary, saved the deed from being a voluntary conveyance.

The testimony of the scrivener was admissible. *Noble* v. *Hunter,* 195 Mich. 713. The evidence clearly established the mistake of the scrivener.

The decree entered in the circuit is affirmed, with costs to the plaintiffs.

McDONALD, BIRD, and SHARPE, JJ., concurred with WIEST, C. J.

FELLOWS, J. I agree with the Chief Justice that the decree in this case should be affirmed, with costs. I am not, however, in entire accord with all he says in his opinion and will briefly state the reason for my dissent from some of his language, and will explain my vote for affirmance.

There can be no conflict or question as to the right of both life tenant and remainderman to effect insurance upon the property. Both have an insurable interest. There is a conflict in the authorities upon the right of the life tenant to retain for himself and for his own use insurance money received by him for a total loss where he has insured the building in his own name for its full value or for a value in excess of his interest. This court, I think, is committed by *In re Cameron's Estate,* 158 Mich. 174, to the doctrine that such life tenant holds the money so received for himself and the remainderman. In that case the *de facto* guardian had insured the barn in excess of the value of the interest of his ward, the life tenant. The barn was totally destroyed by fire and the insurance money was used to rebuild it. This inured to the benefit of both life tenant and remainderman. The ward insisted the money belonged to him. We there said:

"The company paid the insurance promptly. The barn was a total loss and insured for more than the

interest of the life tenant. The authorities are not harmonious upon the question here involved. They agree that, where no requirement is contained in the instrument creating the life estate, the life tenant is not bound to insure the interest of remaindermen— also, that either party may insure for his own benefit. 16 Cyc. p. 632. A line of authorities holds that neither life tenant nor remainderman has any claims upon the proceeds of the policy of the other; that the contract of insurance is a personal contract of indemnity against loss and the sum paid is in no proper or just sense the proceeds of the property. *Harrison* v. *Pepper*, 166 Mass. 288 (44 N. E. 222, 33 L. R. A. 239, 55 Am. St. Rep. 404), and cases cited. A well-considered case taking a contrary view of the question is *Green* v. *Green*, 50 S. C. 514, 532, *et seq.* (27 S. E. 959, 46 L. R. A. 525, 62 Am. St. Rep. 851-854), which holds that a trust arises in favor of remaindermen where the life tenant recovers the value of buildings destroyed by fire. The court said:

"'We therefore think that sound public policy requires that any money collected by a life tenant on a total loss by fire should be used in rebuilding or should go to the remainderman, reserving the interest for life for the life tenant.'"

And it was there held that the money received from the insurance company did not belong to the ward but was properly used to build a new barn for the benefit of both life tenant and the remainderman.

It will be noted that this court then had before it the Massachusetts case and the South Carolina case. These cases are two of the leading cases on the subject and present the opposing views. We there accepted the views of the South Carolina court and then declined to accept the views of the Massachusetts court. The difficulty I find in agreeing with my Brother's opinion is that he now accepts and adopts the views of the Massachusetts court which we there declined to follow. The Massachusetts holding finds support in the cases cited by the Chief Justice and the South Carolina holding has support in the follow-

ing cases: *Welsh* v. *Assurance Corp.*, 151 Pa. 607
(25 Atl. 142, 31 Am. St. Rep. 786) ; *Brough* v. *Higgins,*
2 Gratt. (Va.) 408; *Graham* v. *Roberts,* 43 N. C.
99; *Haxall's Ex'rs* v. *Shippen,* 10 Leigh. (Va.) 536
(34 Am. Dec. 745) ; *Sampson* v. *Grogan,* 21 R. I. 174
(42 Atl. 712, 44 L. R. A. 711).

I am, therefore, constrained to dissent from that
portion of the opinion of the Chief Justice which deals
with this subject. In my judgment we are committed
by the *Cameron Case* to a wise public policy which
prevents a life tenant from profiting by the total de-
struction by fire of the buildings on the premises.

But the defendants have signally failed by their
proofs to bring themselves within the *Cameron Case.*
Fidelia Bliss and her husband, Henry P. Bliss, ac-
quired their life lease of the farm in 1883. It was to
them and the survivor of them. The fire occurred in
1906 or 1907. The insurance appears to have been
in the name of Henry P. Bliss. It was in the amount
of $1,000 and covered both the house and the contents.
How much was received for the loss of the house and
how much for the loss of contents does not appear.
The value of the house is not shown, and there is no
testimony showing or tending to show that the amount
of insurance received for loss of house exceeded or
equaled the value of the interest of the life tenants.
It is purely a matter of conjecture. While there is
some testimony that the insurance money went into
the premises in question, there is also convincing
testimony that about the time the property was pur-
chased Mrs. Bliss received a legacy of $1,600. I
think defendants have failed to establish the allega-
tions of their cross-bill (*McNamara* v. *Langguth,* 198
Mich. 776; *Sampson* v. *Grogan, supra*) and that the
decree should be affirmed.

Clark, Moore, and Steere, JJ., concurred with
Fellows, J.