FARMERS' MUTUAL FIRE and LIGHTNING INSURANCE COMPANY of Andrew County, Missouri, v. J. O. CROWLEY .(Interpleader) and DALE HARVEY, SARAH MINER, BEATRICE HARVEY BEELER, RAYMOND A. HARVEY, GENEVA HARVEY SLADE, DOROTHY HARVEY, CATHERINE SMITH, RACHEL SCHENK, FOREST W. HARVEY (Interpleaders), Appellants.—No. 39606.—190 S. W. (2d) 250.

Division One, November 5, 1945.

*J. Harry Latham* and *Breit & Roberts* for appellants.

**650**

*Lloyd W. Booher* for respondent.

VAN OSDOL, C.—This case has been transferred to this court by the Kansas City Court of Appeals (187 S. W. 2d 346), that court deeming its decision in conflict with that of the Springfield Court of Appeals in the case of Underwood v. Fortune, Mo. App., 9 S. W. 2d 845.

A fire insurance policy was issued to Mary H. Crowley insuring a dwelling on her land. Insured died during the term of the policy, having devised a life estate to her husband, respondent; remainder to appellants, her nieces and nephews. After insured's death, the insurer at respondent's request attached a "rider" to the policy recognizing that the insurable interest of Mary H. Crowley "ceases, and the title of the property insured . . . is now vested in the name of J. O. Crowley (respondent) and the insurance subject to all conditions of the said policy to continue in force . . ." During Mary H. Crowley's lifetime, assessments were paid by respondent from a "common fund" derived from income on lands owned by Mary H. Crowley and other lands owned by respondent which were

operated as one enterprise. After the death of Mary H. Crowley, the assessments were paid by respondent.

Plaintiff insurance company filed and sustained its bill of interpleader and the trial court, examining the claims of the adversary claimants, respondent and appellants, found and adjudged respondent to be entitled to receive the entire proceeds of the policy.

Should respondent (a life tenant) be entitled to receive and use as his own the entire proceeds of the policy?

If a building has been insured prior to the creation of a life tenancy and is afterwards destroyed, the property is in effect converted into personalty and the life tenant is entitled only to a life estate in the proceeds of the insurance contract. Millard v. Beaumont, 194 Mo. App. 69, 185 S. W. 547; 17 R. C. L., sec. 32, pp. 642-3; 21 C. J., Estates, sec. 92, p. 954 at page 955. But it must be clear that the respondent in the instant case, by the procurance of the plaintiff insurance company's "rider," after the life estate became vested, effectuated a new contract of insurance, the company recognizing that the insurance (Mary H. Crowley as insured) was no longer in effect; and undertaking to continue to insure the property on the same terms and conditions, respondent as the insured. The case is not like the case of Millard v. Beaumont, supra, where the insurer and the life tenant seem to have recognized that the insurance originally issued to the creator of the life tenancy continued in force after the life estate became vested, and the life tenant merely procured a loss payable clause to himself "as his interest may appear."

It is the general rule that, in the "absence of any stipulation therefor in the instrument creating the life estate, or of any agreement by the life tenant to do so, he is not bound to keep the premises insured for the remainderman's benefit. Each can insure his own interest, but failing such stipulation or agreement, neither has any claim to the proceeds of the other's policy. Consequently, where no such agreement is shown, insurance procured on the property by the life tenant will be treated as a contract for his indemnity and he will be entitled to the proceeds to the exclusion of the remainderman." Vol. I, Tiffany, Law of Real Property, sec. 65, p. 96. And the rule has been stated in somewhat different scope, ". . . where a legal life tenant insures the property in his own name and for his own benefit and pays the premiums from his own funds, he is, at least in the absence of a fiduciary relationship between him and the remainderman existing apart from the nature and incidents of the tenancy itself, or of an agreement between him and the remainderman as to which of them shall procure and maintain insurance, entitled to the proceeds of the insurance upon a loss; and the fact that the insurance was for the whole value of the fee is not generally regarded as affecting the right of the life tenant to the whole amount of the proceeds." 33 Am. Jur., Life Estates, Remainders, and Reversions, sec. 332, p. 838;

Underwood v. Fortune, supra; Harrison v. Pepper, 166 Mass. 288, 44 N. E. 222; Spalding v. Miller, 103 Ky. 405, 45 S. W. 462; Gorman's Estate, 321 Pa. 292, 184 A. 86 (in Pennsylvania, "a life tenant is not a trustee of the premises for the remaindermen"); Blanchard v. Kingston, 222 Mich. 631, 193 N. W. 241 (note divergence of the view of Fellows, J., from that of Wiest, C. J.); Bennett v. Featherstone et al., 110 Tenn. 27, 71 S. W. 589 (here the court observed that the life tenant is a trustee "in a certain sense"); Thompson v. Gearheart, 137 Va. 427, 119 S. E. 67. The general rule is not considered by some courts (whose views are the bases of a so-called minority rule) as being based upon the soundest reasoning. Clyburn v. Reynolds, 31 S. C. 91, 9 S. E. 973; Green v. Green, 50 S. C. 514, 27 S. E. 952; Crook v. Hartford Fire Ins. Co., 175 S. C. 42, 178 S. E. 254 [here the court—while noting that the rule announced in Clyburn v. Reynolds and Green v. Green, supra, is at variance with the universally accepted doctrine that a contract of insurance is a personal contract and inures to the benefit of the party with whom it is made—states that the (minority) rule so announced is the well-settled law of South Carolina]; Crisp County Lumber Co. v. Bridges, 187 Ga. 484, 200 S. E. 777; opinion of Fellows, J., in Blanchard v. Kingston, supra. It is said, "A life tenant . . . is a trustee for the remainderman, and is certainly liable for loss by fire caused by his negligence. He ought not to be allowed to put himself in a position in which he would have no motive for proper care of the estate by having a policy of fire insurance by which, in case of loss, he could substitute the full fee simple value of the buildings in place of his interest for life. We therefore think that a sound public policy requires that any money collected by a life tenant on a total loss by fire should be used in rebuilding, or should go to the remainderman, reserving the interest for life for the life tenant." Clyburn v. Reynolds, supra; and see Fitterling v. Johnson County Mut. Fire Ins. Co., 232 Mo. App. 805, 112 S. W. 2d 347. In the case of Green v. Green, supra, the court, having observed the language used in Clyburn v. Reynolds which we have quoted, continues, quoting from the case of Bath Paper Co. v. Langley, 23 S. C. 129 at page 148, "If . . . the defendants stood in the relation of *quasi* trustees toward the plaintiffs, then the money received by them for the insurance on the house of the plaintiffs belonged, *ex aequo et bono*, to the plaintiffs." The court (in Green v. Green, supra) continues, "The language used in this decision is plain and unmistakable. Evidently the judgment of the Supreme Court is bottomed ▮▮▮ upon the idea, that the life-tenant is an implied or *quasi* trustee for the remaindermen. Once you admit this trust relation between the life-tenant and the remaindermen, then the conclusion is inevitable that the life-tenant cannot protect her own interest and disregard those of her *quasi cestuis que trustent*." We do not presume to comment on the views of the Supreme Court of South

Carolina, which have been so ably expressed. In our state the relationship of a life tenant to the remainderman is in a sense that of a fiduciary, the life tenant having the duty of preserving and protecting the corpus of the estate for the remaidnerman. The life tenant's trusteeship, however, is not pure, but quasi. For example, the life tenant must not commit waste and he has the legal duty to pay taxes, make ordinary property repairs and keep down interest on encumbrances; and his failure to perform these duties falls under the extention of the rule which prohibits waste. Witcher v. Hanley, 299 Mo. 696, 253 S. W. 1002 (here the life tenant failed in her duty which the law had imposed upon her to pay interest on the debt secured by an encumbrance on the land). See also Souders v. Kitchens, 345 Mo. 977, 137 S. W. 2d 501 (the life tenant's duty to pay his own debt, secured by encumbrance on the land, is observed); Duffley v. McCaskey, 345 Mo. 550, 134 S. W. 2d 62 (here the life tenant's legal duty to pay ordinary annual taxes was recognized by this court); Mathews v. O'Donnell, 289 Mo. 235, 233 S. W. 451 (here again the life tenants failed in their duty to pay taxes). Now, in these (Missouri) cases the life tenants (quasi trustees) should not be permitted to acquire the fee simple estates in the properties by purchases at sales resulting from the neglect of the duties which have been imposed upon them in order to assure their preservation and protection of the corpora of the estates for the remaindermen, but such purchases in equity and good conscience should inure to the benefit of the remaindermen.

A life tenant could not protect and preserve the corpus of the estate for the remainderman by insuring the property for the remainderman's benefit. Such an insurance contract would but indemnify the remainderman for his personal loss sustained by the destruction of the property. Now, broadly speaking, if the (respondent) life tenant had a contractual or legal duty, or a duty imposed by the instrument creating the life estate, to keep the property insured, then we would be confronted with the question whether the proceeds of the insurance contract which the life tenant had procured should, in equity and good conscience, also inure to the benefit of the remaindermen. But as we have seen, it is the general rule that a life tenant, absent an agreement or a provision in the instrument creating the life estate so to do, has no duty to keep the premises insured for the remainderman's benefit.

The insurance policy is a personal contract; both the life tenant and the remainderman have insurable interests in the property; if the life tenant procures the insurance for his personal indemnity, the remainderman, who did not procure the insurance, has no cause for complaint, even if the proceeds of the life tenant's insurance contract exceeds the sum which would indemnify him for his personal loss; the proceeds are of the insurance contract, not of the property, and

do not stand in the place of the property destroyed. See cases cited supra in support of the general rule, which we follow. For a more complete citation and analysis of the cases which undertake the solution of problems similar to that of the case at bar, see Annotation, 126 A. L. R.; p. 336 et seq.

In the case at bar, the will of Mary H. Crowley did not provide that respondent, the life tenant, should insure the property for the benefit of appellants, the remaindermen; no agreement by respondent to insure the property for appellants' benefit was shown in evidence; respondent did not stand in any fiduciary relationship to the remaindermen other than the quasi trustee relationship of a life tenant; the respondent procured the contract of insurance in his own name as insured, and paid the assessments thereafter payable; and appellants were in no way parties to the contract of insurance.

The judgment of the trial court should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.