ELIAS SAUNER, Administrator, Respondent, v. PHŒNIX INSURANCE COMPANY OF BROOKLYN, NEW YORK, Appellant.

Kansas City Court of Appeals, May 19, 1890.

1. **Contract:** PERFORMANCE NOT EXCUSED BY INEVITABLE NECESSITY: UNLAWFUL ACT. The rule that, where a party by his own contract creates a charge upon himself, he is bound to make it good notwithstanding any accident by inevitable necessity, because he might have provided against it by contract, is subject to the qualification, among others, that, if the thing contracted for becomes unlawful, performance becomes impossible by force of law, and non-performance is excusable.

2. **Insurance:** POLICY ON BUILDING: DEFAULT ON PREMIUM NOTE: LOSS AFTER DEATH OF INSURED: EXECUTOR, TRUSTEE: ASSIGNMENT. F. in his lifetime took out a policy of insurance on his dwelling for five years, giving his note for the premium, conditioned that, if the note was not paid when due, the policy should

cease to be in force and remain null and void, until said note was paid. F. died a few months before the note became due, and the loss occurred a few days after it became due. The note was not paid by, nor ever demanded of, the administrator, or presented to the probate court for allowance. By request of the heirs of the assured there was indorsed on the policy that the property herein insured is owned by them and loss, if any, is payable to them as their interest may appear. *Held,—*

(1) The contract being personal with the assured, his executors, etc., the executor was a proper party plaintiff to maintain an action, but he was a mere trustee as distinguished from his executorship.

(2) This characteristic of the contract cannot alter the law of real property, that realty descends to the heir, and the loss in this case was the loss of the heirs and not of the estate.

(3) That the indorsement is to be looked upon in the nature of an assignment; and it was the duty of the heirs to have paid the note at maturity and, not having done so the loss occurring while they were yet in default, the company is discharged.

*Appeal from the Macon Circuit Court.*—HON. ANDREW ELLISON, Judge.

REVERSED.

*B. R. Dysart,* for appellant.

( 1 ) The provision in the note and policy for the suspension and avoidance of the policy, on default in the payment of the note when due, was a part of the contract between the insurer and insured, and was a valid and binding provision. In such cases a recovery upon the policy is conditioned upon the payment of the note at maturity. *Dircks v. Ins. Co.,* 34 Mo. App. 31 ; *Barnes v. Ins. Co.,* 30 Mo. App. 539 ; *McClure v. Ins. Co.,* 31 Mo. App. 62 ; *Palmer v. Ins. Co.,* 31 Mo. App. 467, citing 65 Mo. 78 ; *Bussam v. Ins. Co.,* 1 Mo. App. 228 ; *Gaterman v. Ins. Co.,* 1 Mo. App. 300 ; *Moser v. Ins. Co.,* 2 Mo. App. 408 ; *Ashbrook v. Ins. Co.,* 94 Mo.

72; *Klein v. Ins. Co.*, 104 U. S. 88; *Thompson v. Ins. Co.*, 104 U. S. 252. (2) It is equally well settled that no notice or demand from the insurer to the insured is necessary, unless it is so provided in the contract of insurance. The law only implies the necessity of demand and notice in cases of commercial paper, as where an indorser is sought to be held, or in the case of a guarantor, or some person who is only conditionally or collaterally liable. *McIntyre v. Ins. Co.*, 13 Ins. Law Jour. 216 (Mich. Sup. Court, 1883); *Thompson v. Ins. Co.*, 104 U. S. 232, followed in case of *Ins. Co. v. Doster*, 106 U. S. 30. See also authorities cited on first point. (3) The death of the assured and appointment of an administrator did not, and could not work, any change in the contract of insurance, nor waive any of its conditions. If the personal representative succeeded to this contract, he took it with all its burdens as well as benefits. The law can neither make nor change a contract between two parties. *Conventio vincit legem.* "The administrator's rights are purely derivative, and cannot in any event be greater than those of his intestable." *McFarland, Adm'r, v. Creath*, 35 Mo. App. 112–126; 2 Woerner Am. Law of Admin., sec. 328, *et seq.*, p. 686; 2 Parsons on Contracts, 662; *Wentworth v. Cox's Adm'rs*, 10 Adolphus & Ellis, 42, by Lord DENMORE. (4) It was the duty of the administrator to take charge of and protect the property of his intestate from damage, and every kind of peril, and, hence, to pay said note and save the policy from forfeiture. R. S. 1879, secs. 100, 101; 2 Woerner's Am. Law of Admin., sec. 329, p. 690; *Cooper v. Williams*, 9 N. E. Rep. (Ind.) 917. (5) By the change in the policy and novation of parties, as well as by the law of descents and distribution, the heirs at law of the assured were the beneficiaries of the policy, and the real parties in interest. The property burned and now sued for was real estate, and the proceeds descended to the heirs.

*Wyman v. Wyman,* 26 N. Y. 253 ; *Harrison v. Harrison,* 4 Leigh ( Va.) 371. ( 6 ) It is submitted further, that, even if defendant were liable, the suit should have been in the name of the heirs, the real parties in interest, and not by the administrator. ( 7 ) "But a fatal objection to the entire case set up by the plaintiff is that payment of the premium note in question has never been made or tendered at any time." "A valid excuse for not paying promptly on the particular day is a different thing from an excuse for not paying at all." *Thompson v. Ins. Co.,* 104 U. S. 252.

*John F. Williams,* for respondent.

( 1 ) Every one is presumed to know the law, and to contract with the view of abiding by the law of the state in which the contract is made. Every one is presumed to contract with a view that death is likely to happen, and, when it occurs, the remedy may be deferred and changed, though the liability remains unimpaired, as in the case of one dying while owing an outstanding note, secured by a deed of trust over due. Shall the administrator be controlled by the contract, or the law ? Clearly by the law, and by the law he cannot pay this claim until it is presented to the court, allowed and classified, and then he cannot pay, legally, in less than one year. *Dullard, Adm'r, v. Hardy, Adm'r,* 47 Mo. 403 ; *Pickler v. Harlam,* 75 Mo. 680. ( 2 ) Was no duty devolved upon defendant by the death of assured ? Is defendant above the law ? Upon what meat hath it fed that it has grown so great that Missouri law cannot reach it ? Other people are amenable to the law. The holder, when the maker of a negotiable note is dead, must make due presentment to the administrator, and the notary's ignorance of the death of the maker is no excuse. *Frayser v. Dameron,* 6 Mo. App. 153. ( 3 ) The policy by express terms is payable, in event of loss, to the assured, his executors, administrator or assigns. Burch could not change it, and the

court so found. So that the clear question is now presented to this court of a conflict and contention between the law and a contract. (4) The authorities cited by appellant are not in point. The 31 Mo. App., 94 Mo., etc., are all cases where the assured was living and failed to comply with his contract, enunciating a legal principle that we do not controvert. Appellant cites not a single authority to support its view of this case.

ELLISON, J.—This action is on a policy of fire insurance, insuring the property of plaintiff's intestate for a period of five years, and providing that if the premium note was not paid at maturity the policy should cease to be in force during the time it remained unpaid. The assured died a few months before the note became due, and the loss occurred a few days after it became due. The note was not paid by plaintiff nor was it ever demanded or presented to the probate court for allowance by defendant. The estate is solvent and able to pay if the note was presented and allowed. The judgment below was for plaintiff and defendant appeals. The following is the provision of the policy bearing on the question: "In case the assured fails to pay the premium note, or order, at the time specified, then this policy shall cease to be in force, and remain null and void during the time said note or order remains unpaid after its maturity, and no legal action on the part of this company to enforce payment shall be construed as renewing the policy. The payment of the premium, however, revives the policy and makes it good for the balance of its term." The case presents an important question for determination and we have arrived at a conclusion with considerable difficulty. The provision of the policy making a forfeiture in case of non-payment of the premium is one that is upheld by the courts. We will, therefore, construe the contract of

insurance disembarrassed by any consideration of a disability to incorporate such provision.

Were it necessary to so decide, we might agree to the position taken by plaintiff, that since an administrator cannot pay a premium note for insurance except it be presented by the claimant and allowed by the probate court, and that it could not be paid by the administrator without such allowance, the administrator was excused from a performance of the contract. For, where a party by his own contract creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract. *Paradine v. Jane*, 8 T. R. 267; *Harrison v. Railroad*, 74 Mo. 364; *White v. Railroad*, 19 Mo. App. 400; *Fulkerson v. Eads*, 19 Mo. App. 620. Yet this rule is qualified in some respect; among others is this: If doing the thing contracted for becomes unlawful, performance becomes impossible by force of law, and non-performance is excusable. *People v. Manning*, 8 Cowen, 297; *Wolf v. Howes*, 20 N. Y. 197; *Monsey v. Drake*, 10 Johns. 27; *Dermott v. Jones*, 2 Wall. 1, and cases cited; *Jones v. Judge*, 4 Comst. 412; *Cowan v. Ins. Co.*, 50 N. Y. 610.

II.   But by the agreed statement of facts we learn that there were heirs of the deceased and that the policy was changed by indorsement therein stating, that "it is hereby understood that the property herein insured is owned by J. A. and J. W. and Laura V. Faulkner and Nancy C. Rhinehart, and loss, if any, is payable to them as their interests may appear." This was made at the request of the parties named, who are the heirs of the deceased. It was made after the death of the deceased, but without the knowledge of the plaintiff. The question is, what effect has this upon the right of the parties? Our opinion is that it discharges the company, and for these reasons: The property insured was

real estate, and on the death of the assured it went to the heirs and not to the plaintiff. The loss was the loss of the heirs. I can find no case which holds the proceeds of an insurance policy, under circumstances like this, are assets in the hands of the administrator. The contract was a personal one, and, being with the assured, "his executors, administrator and assigns," it has been determined that the executor or administrator was the proper party plaintiff to maintain an action, but that he was a mere trustee as distinguished from his executorship. Such were the cases of *Wyman v. Wyman*, 26 N. Y. 253; *Bradford v. Ins. Co.*, 8 Abb. Prac. 261; *Lappin v. Ins. Co.*, 58 Barb. 325; *Farmers' Mut. Ins. Co. v. Graybell*, 74 Pa. St. 17; *Germania Ins. Co. v. Curran*, 8 Can. 9. In England a like ruling is had. *Norris v. Harrison*, 2 Mad. 268; *Parry v. Ashley*, 3 Sim. 97. It is true that the policy of insurance is not connected with the land, nor does it go with the land as an incident thereto by conveyance or assignment. It is considered as a special agreement with the persons named (in this case the assured, his executors, administrators and assigns) and unattached to the realty. This is the substance of high authority, both in this country and in England. *Columbia Ins. Co. v. Lawrence*, 10 Peters, 507; *Carpenter v. Ins. Co.*, 16 Peters, 495; *Carter v. Rockett*, 8 Paige, 437; 3 Kent. And this, too, is doubtless the reason for holding that the administrator is the proper party plaintiff. But such characteristic of an insurance policy or such character of contract cannot alter the law of real property. That law is, that realty descends to the heir. Upon the death of the ancestor intestate, the realty becomes the absolute property of the heir, subject to the payment of debts. The loss occasioned by the burning of a house after the death of the ancestor is the loss of the heir, the administrator being a trustee of an express trust, entitled to sue for the benefit of the heir.

The distinction must not be lost sight of between the substantial rights of the administrator and the heir, when the loss is before the death of the ancestor and when *after*. If, before the death, the loss is that of the ancestor. In such case the proceeds of the policy is personalty, for it is the owner who has been insured against loss; the property, properly speaking, is not insured. If the loss is before the death of the ancestor, but payment after, such payment will be assets in the hands of the administrator. But if the loss is after the death of the ancestor, as in this case, it is, as before stated, the loss of the heir, and the proceeds of the policy, if collected by the administrator, would not be assets of the estate, but would be held by him in trust for the heir. This is shown by two illustrations which we borrow from *Wyman v. Wyman, supra*. If the building had been burned, through malice of a third party, the heirs would have had the action for the wrong, as they would have been the sufferers and the administrator would have had no right. Again, if the company should elect under such policy to replace the building, whose would it be? It is plain that it would belong to the heirs. Or, to make the matter plainer, suppose the loss is partial and is repaired, who is benefited?

But, it may be suggested that the policy is not subject to assignment or transfer, even to the heirs, without consent of the company. Without assenting to, or denying this, it is enough here, that it appears by the indorsement, quoted above, that the company has assented. The indorsement may be looked upon in the nature of an assignment. Applying the foregoing principle to the case, we find that, at the time the note fell due, the property insured was the property of the heirs and that the policy had, before this, been indorsed by the company, at their request, "loss, if any, payable" to them. It was their duty then to have paid the note at

maturity, and, not having done so, and the loss occurring while they were yet in default, the company is discharged, notwithstanding the suit is by the administrator, he being, as we have seen, a mere trustee of an express trust, carrying with it a right to sue. We are supported in the views herein by the case of *The Continental Ins. Co. v. Daly, Adm'r*, 38 Kan. 601, which is much like the case at bar in its essential particulars.

The judgment will be reversed.