HOMER S. MILLARD, E. P. BLANKENSHIP, J. W. CANTRELL, JAMES H. COVERT, JACK McCASKILL, C. F. PEAK, C. E. COVERT, R. W. WILLIAMS, B. E. PARMENTER, TALBERT TAYLOR, KATHERINE W. DOOLEY, Executrix of CLARK DOOLEY, Deceased, Appellants, v. CHARLES M. BEAUMONT, Executor of the Estate of E. M. MILLARD, THOMAS FRANKLIN MILLARD and WADE MILLARD, Respondents.

Springfield Court of Appeals, May 22, 1916.

1. **WILLS: Vested Life Estate: Trusts: Restrictions.** A devise for life, with gift over to the bodily heirs, the title being given to the grantee for life with the unrestricted right of possession and use, creates a vested life estate and not a spendthrift trust. No trust is created and any restrictions as to alienation or encumbrance of the life tenant of his interest in the property are void.

2. **INSURANCE: Fire Insurance Contracts: Who Protected by.** Fire insurance contracts in the absence of special provisions are purely indemnity contracts in favor of the insured alone. They do not run with the land and in the absence of some special provision to the contrary the loss recovered, if any, must be

Millard v. Beaumont.

a loss to the person insured  and excludes any loss after the insured's death or after he parts with his title and interest in the property.

3. ——: ——: **Loss Payment Clause: Effect.** Under a will a vested life estate was given to the plaintiff with remainder to his bodily heirs. The testator had insured in his own favor the house, household furniture, etc., included in the will. During the life of the policy, but after the death of the insured, the property was destroyed by fire. After the death of the insured, but before the fire, plaintiff procured the insurance company to add a clause to the policy providing that the loss, if any, should be paid to the plaintiff as his interest might appear. No new contract was entered into with the life tenant for his personal indemnity against loss. The loss payment clause did not have the effect of giving the life tenant the entire fund absolutely as an indemnity for his loss. It merely perpetuated the insurance in favor of the successors to the title of the property insured.

4. ——: ——: **Executors and Administrators: Policy Proceeds.** Where a fire insurance policy permits or authorizes the executor or administrator to sue for and recover the loss, he does so, not as representing the estate, but as trustee for those entitled to the fund because successors in title of the land.

5. ——: ——: ——: ——: **Rights of Parties.** The proceeds of a fire insurance policy having been paid to the personal representative under the facts stated, the life tenant under the will of the insured is not entitled to the entire fund, but only to such part of it as corresponds to his life estate in the property destroyed, the remainderman having a corresponding interest.

6. ——: ——: **Executors and Administrators: Proceeds of Fire Insurance: Use.** The fund which the executor of the insured received under a fire policy for loss of a house and household furniture which was held in trust for the life tenant and the remainderman under the will of the insured, *held* personalty, not realty. The executor cannot be required to convert such property into realty by building a house on the land.

7. **INSURANCE: Fire Insurance Contracts: Life Estates: Commutation.** Plaintiff, under the will of the insured and under a fire insurance policy, had the interest of a life tenant in the proceeds of the insurance, with remainder to his bodily heirs. Under Sec. 8499, R. S. 1909, he was entitled to have the fund commuted, his interest therein being determined according to his expectancy as shown by life tables, the remainder to his bodily heirs.

Appeal from Texas County Circuit Court.—*Hon. L. B. Woodside*, Judge.

REVERSED, AND REMANDED (*with directions.*)

*Barton & Impey* for appellants.

*Lamar, Lamar & Lamar* for respondents.

STURGIS, J.—This is a suit to determine the respective interests of plaintiffs and defendants in the proceeds of a fire insurance policy. The insured property, both real and personal, belonged to Elizabeth M. Millard, who insured the same in her favor. The policy makes no provision whatever as to the loss being paid to her administrator or executor. During the life of the policy, but after the death of the insured, the property was destroyed by fire. The insured left a will, duly executed and probated, disposing of the property insured by this clause: "Second: I give, devise and bequeath to my nephew Homer S. Millard, during his life, the house, household furniture and grounds and all the appurtenances thereto belonging which constitute my home place, where I now reside in Houston, Texas County, Missouri, to have, hold, occupy and enjoy during his natural life; but without the power of incumbrance or alienation, and it is my will that he have full use and benefit of the same to occupy as his home if he so desires, and if not, to have the rents and income therefrom during his lifetime, and at his death, it is my wish and I hereby direct that said property real and personal shall pass to and become vested in the bodily heirs of the said Homer S. Millard, but without the power to incumber, alienate, lease or otherwise transfer or burden the title to said property until after the expiration of twenty-one years after the death of the said Homer S. Millard."

After the death of the insured, and before the fire, the said Homer S. Millard procured the insurance company to add a clause to the policy providing that "the loss, if any, is payable to Homer S. Millard as his interest may appear." On the proofs of loss being presented, the insurance company raised no question as to the validity of the policy but paid same, making the

payment, for its own protection, to Homer S. Millard, beneficiary under the will, and Chales M. Beaumont, executor of the said will of E. M. Millard, deceased, who had owned and insured the property. The insurance company paid, as loss, $1500 on the house and $200 on the furniture. An arrangement was then made by which the proceeds of the policy was placed in the hands of the executor, who yet holds the same.

The plaintiffs here are the said Homer S. Millard and certain creditors of his, to whom he assigned his interest in the fund and who claim only through him. We shall speak of Homer S. Millard as plaintiff. The defendants are the said executor of the will of Elizabeth M. Millard and the minor children, the bodily heirs, of the plaintiff, Homer S. Millard.

The facts are not disputed. The trial court rendered judgment that ''said insurance policy was to indemnify those interested in the property described therein, according to their interest in said property; that under and by virtue of the terms of the last will and testament of Elizabeth M. Millard, Homer S. Millard, the assignor of the plaintiffs herein, took and had at the time of said fire a possessory interest only in said property; and that the only right the said Homer S. Millard had to said insurance money, and the proceeds of said policy, was to have the executor of the said Elizabeth M. Millard use and expend said money in rebuilding and replacing a house on said land, in the place and in lieu of the house destroyed by said fire, and to use and occupy said house or to enjoy the rents thereon in the same manner, and in the same extent as he might have enjoyed the original house had it not been destroyed, and that the remainder, in and to the said house and land, after the expiration of the interests of the said Homer S. Millard, is vested in the defendants Thomas Franklin Millard and Wade Millard, and any other children and heirs, at law, of Homer S. Millard that may hereafter be born; and it is ordered, adjudged and decreed that the said Charles M. Beaumont, executor of the estate of Elizabeth M. Millard, use the money now in his hands, collected from the insurance on the buildings

destroyed by said fire, in rebuilding a dwelling house on said lands, and that defendants recover of and from the plaintiffs herein their costs in this suit laid out and expended and that they have execution therefor." The plaintiff has appealed.

The decree just mentioned narrows too much the plaintiff's interest in the property covered by the insurance policy in question. We think the will clearly gives a life estate in such property to plaintiff with remainder to his bodily heirs. The will attempts to deprive the life tenant, this plaintiff, of all power to encumber or alienate his interest in this property. But whether such restrictions be void or not, the plaintiff is given a vested life estate. His interest in this land, under the will, is more than that of a beneficiary of a spendthrift trust. Here the life tenant has title and ownership and is given the possession of the property and the right to collect the rents and receive the income and no trustee is appointed. There is no trust estate created, and the restrictions as to alienation or encumbrance of his interest in the property are void. [Kessner v. Phillips, 189 Mo. 515, 524, 88 S. W. 66.]

Viewing the land as being vested in the plaintiff for life and remainder to his bodily heirs, what interest does such life tenant have in the proceeds of this policy? The plaintiff contends that on the death of the insured the policy was forfeited, as it was a mere contract of indemnity with the insured personally, and that the clause making the loss payable to him was in effect a new contract with him and therefore the amount paid on the policy belongs solely to him. To the contrary, several authorities are cited as holding that a policy of insurance, unless expressly so provided, is not forfeited by the death of the insured, but continues for the benefit of the heirs or beneficiaries under the will. [19 Cyc 743; Forest City Ins. Co. v. Hardesty (Ill.), 55 N. E. 139, 141; Planters Mutual Ins. Ass'n. v. Dewberry (Ark.), 62 S. W. 1047; Pfister v. Gerwig (Ind.), 23 N. E. 1041; Richardson v. Ins. Co., 89 Ky. 571, 13 S. W. 1, 8 L. R. A. 800.] An examination of the above cases discloses, however, that each contains some provision

for payment of the loss to the administrator or executor. These cases deal with the question of whether a policy is forfeited by reason of the change of ownership occasioned by death of the insured where the policy provides for a forfeiture in case of any change or transfer of the title and hold the negative of that proposition. The general, if not universal, rule is that fire insurance contracts are purely indemnity contracts in favor of the insured only, do not run with the land, and, in the absence of some special provision to the contrary, the loss recovered, if any, must be a loss to the person insured and excludes any loss after the insured's death or after he parts with his title and interest in the property. [19 Cyc. 583, 591; 13 Enc. of Law (2 Ed.), 100; Quarles v. Clayton (Tenn.), 3 L. R. A. 170, 10 S. W. 505; Hine v. Woolworth, 93 N. Y. 75, 45 Am. Rec. 176; Sauner v. Phoenix Ins. Co., 41 Mo. App. 480, 486; Doggett v. Blanke, 70 Mo. App. 499, 502; Trabue v. Ins. Co., 49 Mo. App. 331, 335.]

But in the present case the insurance company recognized its liability as continuing after the death of the insured, both by the loss payment clause added thereto after the death of the insured and later by the actual payment of the loss, so that the question of the indemnity being personal to the insured is out of the case. Nor do we think there was any new contract entered into with the life tenant for his personal indemnity against loss as there might have been since he had an insurable interest. [Dick v. Ins. Co., 10 Mo. App. 376; Kempf v. Ins. Co., 41 Mo. App. 27, 33.] The plaintiff life tenant paid no premium or consideration for a new contract and the continuation of the policy in favor of the owners of the property was based on the premium previously paid by the insured in her lifetime. The loss payment clause making the loss payable to plaintiff, the life tenant, "as his interest may appear," should not be construed to have the effect of giving him the entire fund absolutely as an indemnity for his loss. It should be construed rather as merely perpetuating the policy in favor of the successors to the title of the property insured. In Ridge v. Ins. Co., 64 Mo. App. 108, the

facts showed the insurance of property in which one
Sallie Ridge had a life estate with remainder to the
plaintiff in that case.   The policy contained a clause
making the loss payable to the life tenant "as her in-
terest may appear."   The ·court·held that "under the
evidence Mrs. Ridge was not the sole beneficiary in the
policy.   She was only a life tenant and as such her
interest in the amount of the insurance at the date of
the loss was to be determined according to her 'expec-
tancy' as shown by the life tables.   The remainder of
the fund belonged to the plaintiff as the owner of the
fee.   By the terms of the policy the loss was made pay-
able to Mrs. Ridge as her interest might appear."   The
case was likened to one where the loss was payable to
a mortgagee as his interest might appear and the court
further said:  "Applying the principles stated to the
case at bar, the conclusion is unavoidable that the right
to sue devolved on Mrs. Ridge as life tenant and the
plaintiff as reversioner.   Each had a direct and specified
interest in the amount due under.the policy."   4 Cooley's
Briefs on Insurance, 3696, states the law thus:  "The
modern policy is usually so written as to become payable
after the death of insured to his personal representa-
tives. . In such case the personal representative holds the
proceeds in a double capacity.   If the personal estate is
not sufficient to pay the debts of the deceased, resort
may be had to the proceeds of the policy, and to this
right the claim of the heirs is subordinate.   But aside
from the claims of creditors, the proceeds should be dis-
tributed among those entitled to the real. estate."   And
it should be added in accordance with their interest
therein.   In Graham v. Roberts, 43 N. C. 92, where ·the
insurance had been paid on destroyed property in which
there was a life estate in Mrs. Daves, with remainder
to her children, the court said:  "We are of opinion that
the money received upon the policy of insurance, stands
in place of the buildings consumed by fire—that Mrs.
Daves is entitled to the interest thereon for life, in lieu
of the use and occupation of the buildings, and the said
John, Edward and Graham Daves will, at her. death, be
entitled to the principal money."   In Culbertson v. Cox,

39 Minn. 309, 43 Am. Rep. 204, the property was insured by the owner who subsequently died leaving a widow who took a life estate with remainder over. The insurance money having been paid the court affirmed the judgment of the trial court that "the proceeds of the policy partook of the character of the real estate, and were affected with a trust for the benefit of the parties interested in such real estate, and that the plaintiff, as widow of the deceased, was entitled to the use of the money during her life—the same interest she was entitled to in the property destroyed—and gave her judgment for a sum in gross equal to the present worth of this life interest." The court further said: "The position which we have suggested and urged, to-wit, that the proceeds of the policy belong to those beneficially interested in the property, is not without authority to sustain it. In the case of Parry v. Ashley, 3 Sim. 97, the testator charged his real estate with an annuity to his widow, and subject thereto devised it to A. in fee, and appointed A. executrix. The testator had insured the property in his own name. The policy expired a few months after his death, and was renewed by A. Soon after the property burned. The widow filed a bill against A. for an account, and security of the annuity. The court ordered the insurance money to be paid into court, it being taken that A. had renewed in the character she was entitled to renew, viz., as executrix; the vice-chancellor remarking: 'The inclination of my opinion is that the proceeds of the policy cannot be considered as part of the testator's general personal estate, but that they are affected with a trust for the benefit of the parties interested in the real estate, and prima facie there is much ground for holding that the proceeds of the policy are a substitution for the property charged.' "

In cases where the policy permits or authorizes the executor or administrator to sue for and recover the loss he does so, not as representing the estate, but as trustee for those entitled to the fund because successors in title of the land. [Sauner v. Ins. Co., 41 Mo. App. 480, 486; Coil v. Ins. Co., 169 Mo. App. 634, 636, 155 S. W. 872; Ridge v. Home Ins. Co., 64 Mo. 108, 109; Wy-

man v. Wyman, 26 N. Y. Rep. 253; Quarles v. Clayton (Tenn.), 3 L. R. A. 170.] It is clear, therefore, that plaintiff is not entitled to the entire fund in question, but only such part of it as corresponds to his life estate in the property destroyed. The remaindermen, defendants, have a corresponding interest.

We find no justification, however, for that part of the decree authorizing and directing the executor to use the insurance money in building a dwelling house on this land in lieu of the one burned. While the fund in question goes to those interested in the land, in accordance with their respective interests, the fund is nevertheless personalty and not realty. We find no case authorizing the court to convert it into realty by building a house on the land. The case of Haxall's Executors v. Shippen (Va.), 34 Am. Dec. 745, is a case where the life tenant had received the proceeds of an insurance policy in which the remaindermen had an interest and had in fact expended it in rebuilding the house burned and set this fact up as a defense to her having to account to the remaindermen for such fund. The court held this to be no defense and in discussing the right of the life tenant to so use the money, said: "Being entitled to its use for life, indeed, she might have used it during life as she pleased, but she could have no right so to use it as to affect or impair their right to the use of the *money itself*, after her death. Unless all, therefore, concurred in this conversion of personalty into realty, neither could so divert it. . . . Where, however, as in our insurances, the policy binds the insurers to pay the insured, his heirs, etc., the policy must be considered, I conceive, as a covenant real of which the heir, and not the executor must have the benefit. Still, it does not follow, that when the money is paid to the heir he is bound to pay it out in rebuilding; and if, as usually happens, there are several heirs, it is not perceived that either had a right to insist that the others shall unite with him in rebuilding the premises. The insurance is a compensation for a loss, and when that compensation is paid, it is money in the hands of the assured, of which they may dispose at pleasure.

. . . The covenant does indeed run with the land, and inure to the benefit of all who have title to the estate, according to their respective interests. But the damages (or insurance money) when recovered, are not to be considered as part of the inheritance. They are a sum in gross, belonging to the parties according to their respective interests. There is no authority for the principle that an equity attaches to the damages recovered at law, to give them the particular destination of rebuilding the premises for the loss of which they were recovered. . . . There is nothing to bind him to rebuild: And if he gives the property to A. for life, remainder to B., he does not give to either any right to demand the concurrence of the other in rebuilding the premises. As assignees, each has a right to benefit in the covenants proportioned to his interest, and each has his distinct action at law. [Attersoll v. Stevens, 1 Taunt. 183.]'' Speaking of this subject in Dix v. Ins. Co., 65 Mo. App. 34, 37, the court said: ''The court in its decree seemed to have laid some stress upon the fact that the plaintiff had rebuilt the house at his own expense. This fact was wholly immaterial. The plaintiff as life tenant was under no obligation to restore the house, unless it was destroyed by some negligence of himself or his servants. The fact that he restored the house gave him no better claim on the insurance money, but it has a tendency to show that the appellants as reversioners suffered no loss by the fire, and that, as between them and the plaintiff, he was the only one who suffered substantial loss thereby.'' The fact that the insurance company might have elected to rebuild the house instead of paying the loss in money by no means justified the court in directing the money to be so used. This contention was disposed of by Justice Lurton, then Judge of the Supreme Court of Tennessee, in Quarles v. Clayton, 3 L. R. A. 170, 174, thus: ''That the insurance company had the option to rebuild is urged as a reason why the insurer's election to pay, instead of rebuilding, ought not to operate to the disadvantage of complainant. This option is one common to all contracts of fire insurance; and the argument, if good in the case, would operate to

overturn the well settled rule that no equity attaches to the proceeds of a fire policy in favor of third persons who have suffered loss, in the absence of some agreement to that effect.  If this option to pay or rebuild should be regarded as sufficient, to found an equity upon, in favor of third persons disappointed by the election of the insurer, the law of insurance would have to be rewritten.''

The plaintiff, as well as his creditors, is demanding that his interest, a life estate, in this fund be commuted, as provided by section 8499, Revised Statutes 1909.  Such section provides for such commutation when the life tenant is entitled to the annual interest on a sum of money or to the use of an estate ''and is willing to accept a gross sum in lieu thereof.''  It may well be doubted whether the attempted restrictions as to alienating or encumbering the real estate imposed by the will would be applicable to a sum of money recovered as damages on an insurance policy, since such fund is personalty and not realty.  We have, however, determined that even the realty was not a trust estate and that the attempted restrictions on the alienation and encumbrance of plaintiff's interest therein are void.  The authorities cited by defendants, 39 Cyc. 236, 240; Partridge v. Cavender, 96 Mo. 452, 9 S. W. 785; and Monday v. Vance (Tex.), 51 S. W. 346, as holding the contrary deal with trust estates, that is, property conveyed to a trustee who holds and manages the same paying the income to the beneficiary. [39 Cyc. 17; Corby v. Corby, 85 Mo. 371, 388.]  There is no such trust estate created by the will in question.  It will be seen from the authorities cited by defendants above noted that even in case of trust estates the interest of the beneficiary is alienable unless such alienation is plainly prohibited.  It will be seen that in Culbertson v. Cox, supra, the court, while holding that the life tenant was entitled to ''use of the money during her life—the same interest she was entitled to in the property destroyed,'' awarded her ''judgment for a sum in gross equal to the present worth of this life interest.''  In Ridge v. Home Ins. Co., supra, it is said that the interest of the life tenant in the pro-

ceeds of the insurance "was to be determined according to her expectancy as shown by the life tables." This should be done in this case, and the remainder of the fund awarded to plaintiff's bodily heirs, born and to be born.

The result is that the case is reversed and remanded with directions to enter judgment in conformity with this opinion.

*Robertson, P. J.,* and *Farrington, J.,* concur.