## GREEN v. GREEN.

1. SUPREME COURT—DEMURRER to a complaint that it does not state facts sufficient to constitute a cause of action cannot be interposed for first time in Supreme Court.

2. CAUSE OF ACTION.—RELIEF.—The foundation of plaintiffs' claim and that of defendants to the relief sought is not one and the same, and defendants cannot set theirs up in this case.

3. TRUSTS.—REMAINDERMEN.—Plaintiffs here only seek to have the fund impressed with a trust in favor of remaindermen.

4. ACCOUNTING—WILLS—REMAINDERMEN.—Under this proceeding, it is not proper to require the heir of the remainderman to account for amounts received by him under another clause of the will in excess of what his share of the property in question would amount to.

5. INSURANCE—LIFE TENANT—REMAINDERMEN—TRUSTS.—Insurance money collected by a life tenant on a total loss by fire should be used in rebuilding, or should go to the remaindermen, reserving the interest for life of life tenant for him. *Affirming Clyburn* v. *Reynolds*, 31 S. C., 118.

6. LIMITATION OF ESTATES—CONVERSION—INSURANCE.—The proceeds of an insurance policy on entailed real estate is not personal property, but is impressed with same limitations as original property.

7. REFERENCE—PRACTICE.—A Circuit Judge may refer a case in chancery to the master to take the testimony on the issues raised by the pleadings, with instructions to report his findings of fact, against objections of one party.

8. ACCOUNTING—LIFE TENANT—INSURANCE.—Where life tenant insures property for a number of years, and it is at last burned, he is only entitled to be reimbursed the premium paid for the policy in force at time building was burned.

Before BUCHANAN, J., Richland, November, 1896.    Affirmed.

Action by Frederick L. Green, as administrator of the estate of Allen J. Green, deceased, and as administrator of the estate of Frederick L. Green, deceased, and also in his own right, William G. Green, G. Washington Pringle, Allen C. Green, Walter G. Green, Sallie S. Green, Allen J. Green, of Alabama, Walter Green and Martha C. Green, against Lucy J. Green, Halcott P. Green, as trustee, Sallie G. Heyward, Lucy P. Heyward, Nathaniel B. Heyward, Halcott P. Green, as administrator of the estate of Halcott P. Green, deceased, and also as administrator of the estate of John S. Green, deceased, and also in his own right, Allen J. Green, of South Carolina, Eliza G. Singleton, M. Caroline Jervey, Walter Izard, Henry Izard, Allen Izard, Izard Heyward, and Frederick G. DeSaussure.

Plaintiffs demurred to defendants' answer, which was sustained by the Circuit Judge, and he referred the case to the master to take the testimony on the issues, and report same with his findings of fact.    From this judgment the defendants appealed on the following exceptions, and also served the following notice of demurrer:

1. Because it appears from the pleadings that the foundation of the plaintiffs' claim and that of the defendants to the relief sought by them is one and the same, to wit: the will of Lucy P. Green, deceased, and hence the defense or counter-claim is a proper one, under the laws of this State, and the Judge erred in not so holding.

2. Because it appears from the complaint that the right of the plaintiffs to maintain this action is derived by inheritance from devisees under the will of Lucy P. Green, deceased; and it being admitted by the demurrer that the ancestors of the plaintiffs are indebted to the estate of Lucy P. Green, plaintiffs take the assets descended, charged with the debt of their respective ancestors, and must account for such debts before they can receive any portion of said estate, and the Judge erred in not so holding.    And,

3. Because one of said devisees, to wit: Allen J. Green, being also one of the executors of the said Lucy P. Green, the plaintiffs who inherit through him can take no assets of the said estate until accounting is had of his executorship, and the Judge erred in not so holding.

4. Because the demurrer admitting that the contract of insurance only covered the interest of the life-tenant, the defendant, Lucy J. Green, as matter of law, the remainder-men can have no interest in the insurance money, and the Judge erred in so holding.

5. Because, even if the contract of insurance be held, as matter of public policy or law, to redound to the benefit of the remaindermen, the defendant, Lucy J. Green, must be reimbursed the insurance premiums and repairs made necessary by the casualties of war, the same having been paid out of her private funds, and the Judge erred in not so holding.

6. Because the insurance money arising from the destruction of the dwelling house by fire became personal property, and if it passed at all under the will of Lucy P. Green, became a part of the residuary estate, and the answer alleging and the demurrer admitting an original failure of assets, the defense was proper either as a counter-claim or set-off, and the Judge erred in not so holding.

7. That under sec. 292 of the Code and the general principles of equity jurisprudence, all parties in interest being before the Court (Halcott P. Green, one of the defendants, being admitted by the demurrer to be the administrator *de bonis non* of the estate of Lucy P. Green), the defendants have the right to have all matters arising under the will of Lucy P. Green, and germain to the settlement of her estate, adjusted in this action, even though the matter be subject for an independent cause of action, if for no other purpose to prevent circuity of action and multiplicity of suits, and the Judge erred in not so holding.

8. Because his Honor erred in referring all the issues of fact to the master, whereas it is submitted that the defend-

ants not having consented to such order, it should have been referred only to take the testimony and report the same to the Court.

Plaintiffs' attorneys will further take notice that the defendants, appellants, will move the Supreme Court to dismiss the complaint herein because it appears from the face thereof that the same does not state facts sufficient to constitute a cause of action against the defendants, in that:

1. It fails to allege facts sufficient to show any obligation on the part of the life-tenant to keep the buildings insured, or that the insurance effected by life-tenant was taken to protect the interest of the remaindermen.    2. It fails to allege that the amount received by the life-tenant from the insurance company upon the burning of the dwelling exceeded the value of her interest therein.    3. That from the facts stated as matter of law, the money arising from the insurance is the sole property of the defendant, Lucy J. Green, and neither the plaintiffs nor their ancestors, who were remaindermen under the will of Lucy P. Green, deceased, have any interest therein; and failing in this, 4. That if the remaindermen under the will of Lucy P. Green have any interest in the said money arising from the insurance, as matter of law, that interest is the right to receive, upon the death of the defendant, Lucy J. Green, the life-tenant, only so much of the $3,000 insurance money as remains after deducting all premiums of insurance that have been paid, without any interest and without any profits or accretions that may have arisen from its use; and there being no allegation of insolvency, there is neither a resulting trust nor a case for equitable interference made by the complaint.

*Messrs. Greene & Greene* and *W. St. Julian Jervey*, for appellants, cite: *Demurrer may be raised for first time in this Court:* 25 S. C., 166; Code, 165; 29 S. C., 69; 17 S. C., 415; 37 N. Y., 640; 5 S. C., 10; 2 Brev., 125; 12 S. C., 4; 24 S. C., 122; 19 S. C., 223; 12 S. C., 558. *Life tenant of personal property is quasi trustee for remaindermen:* 1 McC.

Eq., 227; 4 DeS., 29, 143; Rich. Eq. Cases, 361; 1 Hill Ch., 69, 370; 2 Rich. Eq., 260; 1 Rich. Eq., 427; 2 Hill Ch., 515; McM. Eq., 269; 3 Rich. Eq., 170. *When life tenant is required to give bond:* 4 DeS. Ch., 29; 1 McC. Eq., 227; 2 McC. Eq., 149. *Life tenant is not responsible for destruction by fire when he is free from carelessness or neglect:* 4 Chan. Div., 532; 44 N. E. R., 222. *Insurance Co. alone can raise the question of insurable interest in insured:* 34 A., 1066; 101 U. S., 439. *Life tenant had insurable interest:* 5 Wall., 509. *And proceeds belong to him:* 10 Leigh., 347; 16 Pet., 495; 3 Met., 66; 18 Chan. Div., 1; 1 Hovenden Sup., 305; 9 Allen, 123; 10 Pet., 507; 10 Leigh, 347; 44 N. E. R., 222; 26 S. C., 505; 36 S. C., 266; 16 Pet., 496; 151 U. S., 452; 23 Ch. Div., 188; 20 S. E. R., 65, 325; 3 Rich. Eq., 160; 2 Hill Ch., 520; 3 Strob. Eq., 78; McM. Eq., 459; 1 Rich. Eq., 427; 16 At. R., 734; 36 S. C., 1; 56 N.Y., 615; 80 Hun., 514; 8 Ired. Ch., 99; 23 S. C., 129; 20 A. R., 213; 2 Hill Eq., 215. *Insurance money is personal property:* McM. Eq., 459; 2 Hill Ch., 520; 3 Strob. Eq., 78; 17 S. E. R., 241; 1 Rich. Eq., 427. *The indebtedness of the ancestors of plaintiffs to the estate is a proper defense against plaintiff's claim:* 5 Rich. Eq., 167; 29 S. C., 325; 30 S. C., 617; 41 S. C., 459; 1 Hill Ch., 35; 2 Hill Ch., 260. *Other necessary parties must be brought in:* Code, 143; 3 P. Wms., 333; 2 Hill Ch., 260; 23 S. C., 146; Code, 296; 42 S. C., 319; 47 S. C., 462. *Judge could only refer this case to have testimony taken:* Code, 293; 25 S. C., 80.

*Messrs. Smythe, Lee & Frost* and *R. W. Shand,* contra, cite: *Cases opposed to Clyburn & Reynolds:* 23 Ch. Div., 183; 166 Mass., 288; 14 N. Y. Sup., 657. *Cases favorable but not exactly in point:* 26 N. Y., 253; 1 Ves. Sr., 459; 91 Mass., 125; 149 Mass., 158; 18 Chan. Div., 1. *Cases supporting it:* 3 Simons, 97; 34 Am. Dec., 745; 25 At. Rep., 142; 23 S. C., 129; 31 S. C., 118. *Demurrer to complaint can not be entertained here:* 30 S. C., 526; 35 S. C., 372; 1 S. C., 179. *Life tenant is trustee for remaindermen:* 2 Hill

Ch., 523; 2 Strob. Eq., 214; 31 S. C., 118; 10 Leigh, 536; 8 Ired. Eq., 99; 2 Madd. Ch., 278; 94 U. S., 714; Bail. Eq., *398; 35 At. R., 346; 2 Hare, 144; 3 Russ., 582; 120 U. S., 707. *Insurance money bears same character as property insured:* 11 S. C., 427; 8 Rich. Eq., 79, 291. *Defendants cannot set up overpayment of residuary estate against plaintiff's claim:* 21 S. C., 50; 2 How., 383; 26 S. C., 76; 20 S. C., 476; 25 S. C., 303; 32 S. C., 245. *Trust money may be followed:* 4 DeS., 153; 25 S. C., 35. *Reference to take testimony and find facts may be ordered without consent:* 27 S. C., 428; 33 S. C., 394; 20 S. C., 584.

Sept. 30, 1897. The opinion of the Court was delivered by

MR. JUSTICE POPE. This action was commenced on the 28th May, 1896, in the Court of Common Pleas for Richland County. The complaint alleged in substance: In first paragraph: That Lucy P. Green, widow, late of the city of Columbia, in this State, departed this life on the 6th day of August, 1864, leaving of force her last will and testament, whereby, in the first item thereof, she devised as follows: "1st. I devise and bequeath to my daughter, Lucy J. Green, my house and lot in Columbia, my present residence, together with all the furniture and things appurtenant in the house and kitchen. The lot contains one acre and a half, and is separated by a fence from my adjoining lot. This devise is made to her for life, for her sole and separate use, not subject to debts, contracts or control of any husband with whom she may intermarry. At her death, I devise and bequeath the same to my four sons, Allen J. Green, Halcott P. Green, Frederick L. Green, and John S. Green, and the children of my daughter Lucy, if she should have any living at her death, they taking among them one share; if she leaves none living at her death, then to my four sons." 2. That the defendant, Lucy J. Green (who is the devisee for life named in said will), immediately after the death of said testatrix, took possession of the said lot of land, and in person or by her tenants occupied the

dwelling house thereon until its destruction by fire in the year 1878. 3. That prior to said fire, the said Lucy J. Green, the life tenant, had caused said dwelling house to be insured against fire, and the said fire having occurred while the said policy or policies of insurance were in force, the said Lucy J. Green received, early in 1878, under said policy or policies, and on account of said loss by fire, the sum of $3,000, which was paid to her by the insurance company or companies which had underwritten such policy or policies. 4. That no portion of the insurance money so received by the said Lucy J. Green on account of the loss by fire of the dwelling house on the lot of which she was life tenant under her mother's said will was used in re-building on said lot of land so held by Lucy J. Green for life; but, though said money was held by her in trust for the remaindermen under her mother's said will, it was wholly used by her in the purchase of a tract of land in and near the city of Columbia, known as the brick yard tract, containing 418 acres, more or less, and hereinafter more particularly described; and was further used in the purchase of one acre of land at the northeast corner of Pendleton and Bull streets, in the city of Columbia, S. C., bounded north by the life estate lot first above described, and east by Amy Taylor's; that other moneys used by said Lucy J. Green in making said purchase, with perhaps some inconsiderable exception, was obtained by her by borrowing the sum of $2,000 on the security of a mortgage of the said "Brick Yard Tract," which was afterwards paid off and satisfied out of the proceeds of sale of said brick yard tract, made by her in the year 1891. 5. That on the 6th January, 1879, the said Lucy J. Green purchased at judicial sale the said brick yard tract for the sum of $2,500, and received title deed thereto, and all the money paid by her on account of such purchase was received by her on account of said fire insurance and said loan, and was applied to a first mort-gage covering said brick yard tract, to costs and expenses of sale, and to a second mortgage and costs which had been

previously purchased by her with a portion of the said insurance money.    6. That on the 2d of February, 1880, the said Lucy J. Green purchased at sheriff's sale the said one -acre lot at the corner of Pendleton and Bull streets, in Columbia, S. C., for the sum of $590, and received a title . thereto.    A large portion of the purchase money of this lot of land was applied to the judgment of Scott & Son against John S. Green, which had been purchased by said Lucy J. Green in March, 1878, and under which said land was sold; and the money used in making the purchase of said lot of land, as also in the purchase of the said judgment, was derived from the same sources as stated in paragraph 4, *supra.* 7. On January 2, 1891, the said Lucy J. Green sold the said brick yard tract of 418 acres, more or less, and now bounded by S. A. Pearce on the north, east by J. M. Graham and others, south by Sallie Taylor, and west by Congaree River, for $40,000, $10,000 whereof was received in cash, and $30,000 whereof was secured by bond of the purchaser and a mortgage of the premises.    No part of the principal of said bond and mortgage has been paid, and is still held by the said Lucy J. Green, and is claimed by her as her absolute property.    8. That with the $10,000 received by Lucy J. Green in cash, she paid off the mortgage debt of $2,000 contracted in January, 1879, and she caused to be erected two dwelling houses on the one acre lot above mentioned, at the corner of Pendleton and Bull streets.    The one nearest the corner is now occupied by Miss Green, and the other dwelling house so erected, together with lot on which it stands, measuring sixty feet on Pendleton street by 196 feet in depth (being the eastern side of the acre lot purchased by her under the Scott judgment as aforesaid), she conveyed in fee simple, on June 16, 1892, on the consideration of love and affection alone to the defendant, Halcott P. Green, in trust for Mrs. Sallie C. Heyward for life, with remainder to the defendant, Lucy P. Heyward, and her issue, or in default of such issue, then to the defendant, Nathaniel B. Heyward, in fee.    9. That the said insurance money having been re-

ceived by the said Lucy J. Green in trust for herself for life, and then for the remaindermen of the property, the loss of which by fire the said insurance money was paid to reimburse, and having been used by her in acquiring the said brick yard tract and city one acre lot, and the said brick yard tract having been by her converted into cash and bond and mortgage, and said cash having been used in the improvement of said city acre lot, and the convey-ance to H. P. Green in trust for Mrs. Heyward and others having been without any valuable consideration, the said Lucy J. Green now holds said bond and mortgage of $30,000, and her dwelling house with the lot on which it stands, bounded east by the lot conveyed to H. P. Green, trustee, in trust for herself for life, and then for the remainders de-clared in the first item of her mother's will, and the said Halcott P. Green holds the said Heyward lot in trust for the persons named in the deed appointing him trustee, but only for the lifetime of said Lucy J. Green, and then in trust for the remainders declared in the first item of Mrs. Lucy P. Green's will as aforesaid. 10. That the said Lucy J. Green has declared her intention of disposing of the house and lot now occupied by her, and of the bond and mortgage aforesaid held by her, as if the same belonged to her in fee, and in disregard of the rights which attach to this property by virtue of the will of Mrs. Lucy P. Green, and the law of the land touching the proceeds of insurance received by a life tenant from houses of the life tenant burned by fire; and so believing and intending, the said property, now held by her in trust for herself for life, with remainder to the heirs and proper representatives of her four deceased brothers, may be lost to the remaindermen unless prevented by the restraining order of this Court. 11. That since the burning of the dwelling house of the late Mrs. Lucy P. Green in 1878, her four sons have all died—the said Lucy J. Green surviving, but unmarried. The complaint then states the death and intestacy of Allen J. Green, who died in 1879; of John S. Green, who died

childless and unmarried in 1880; of Frederick L. Green, who died in 1880; of Halcott P. Green, who died in the year 1891; also the names of the administrators of each of said intestates, and the heirs at law of each respectively, all of whom are made and named as parties plaintiff or defendant. The appropriate prayer for relief is made.

All the parties defendant have answered—the infant defendants through guardians *ad litem.* The answer of the defendant, Miss Lucy J. Green, is substantially as follows: 1. That she admits the allegations of paragraph 1 and all of paragraph 2 of the complaint, except that fire occurred in 1877 and not in 1878, as alleged; admits all of paragraph 3 and 7 and all of paragraph 8, except she alleges the money received by her on the cash payment was not sufficient to complete the said buildings; the deficiency having to be supplied from other sources. She admits 11, 12, 13, 14, 15, and 16, except the age of Lucy P. Heyward, and she alleges the said Lucy P. Heyward is under fourteen years of age. 2. Answering paragraph 4 of the complaint, she admits that no part of the insurance money was used in rebuilding, but denies every other allegation of said paragraph. 3. Answering paragraph 5, she denies that any part of the purchase money of the said tract of land was the insurance money. She admits her purchase for the price therein alleged, but had no knowledge of the application of the proceeds of the sale. She denies each and every other allegation in said paragraph contained. 4. She admits so much of paragaaph 6 as alleges her purchase at sheriff's sale of the one acre lot at $590, but denies that same was paid for with insurance money. She admits her ownership of the Scott judgment, and alleges that the same was held by her as collateral for a loan of a portion of the insurance money, but alleges that if any part of the purchase money of said lot was applicable to the Scott judgment, it was a very small portion thereof, and she denies every other allegation in said paragraph inconsistent with the foregoing. 5. She denies all the allegations of paragraph 9 and all the allegations of

paragraph 10, except in so far as making the trust deed, and her will may be held to be a declaration of intention to dispose of the said property, without this she denies that she has ever contemplated any disposition of the said property, or contemplated even by will and the said trust deed any disposition of the same outside of the family of her brothers and sisters. She further alleges that until recently, ever since she has been in receipt of any income from said property, a large proportion thereof has been used by her in the support, maintenance and education of the families of the plaintiffs in this action. 6. She denies each and every allegation in said complaint not hereinbefore specifically admitted.

Further answering the complaint, she alleges: 1. That the said property mentioned in paragraph 1 of said complaint came to her just before the occupation of Columbia by the Federal troops; that by the said public enemy it was gutted, injured and defaced, and finally seized and occupied as a hospital for the troops, and a large portion of the rents allowed this defendant by the government was used by her in repairs made necessary by the casualties of war. That when said property came into her possession it was uninsured, and she with her own money insured her interest therein, for her own use and benefit, and for ten years prior to the said fire, paid the premium of insurance thereon, which together with the interest aggregated the sum of $678; and she submits that, under the circumstances heretofore set out, the remaindermen have no right or interest in said insurance, nor is there any obligation on this defendant to use the said fund in rebuilding. But even if it be held that the insurance money is not the property of the life-tenant, then this defendant submits that upon the burning of the dwelling house, the amount of the insurance money, less the amount paid by this defendant in repairs made necessary by the casualties of war, and to procure and maintain said insurance as aforesaid, which amounts in equity and good conscience she must first be reimbursed

out of said fund, became a part of the personal estate of the said Lucy P. Green, deceased, and her executors thereupon entitled to the control and management of the same, for the purpose of keeping said funds invested, and paying to this defendant the interest and profits arising therefrom.    That large amounts having been received from the said estate by the said heirs, Allen J. Green, Frederick L. Green, and John S. Green, on account of their shares in said estate, as is shown by the books and accounts of the said executors, this defendant should be allowed to retain the amount of the insurance money due the executors as a part of her share of the said estate; and this defendant is now ready and willing to have an accounting by all the legatees and devisees with the administrator *de bonis non, cum testamento annexo*, of all amounts received by all and each of said devisees and legatees from the said estate, and prays that the Court will determine the rights and interests of all the said parties in the said estate of Lucy P. Green, deceased.    2. That under the 14th clause of the said will of Lucy P. Green, deceased, all the rest and residue of the said estate is devised and bequeathed to her said four sons and this defendant in equal shares.    3. That the residue of the said estate at the time of the death of the said Lucy P. Green, consisted of the lots of land in the city of Columbia adjoining the homestead, and a tract of about 100 acres of pine land near the city of Columbia, and a half interest in quite a large plantation in the State of Alabama, besides a large number of slaves which were freed by the casualties of war.    4. That upon the death of the said Lucy P. Green, her sons, Allen J. Green and Halcott P. Green, two of the executors named in said will, duly qualified as executors thereunder and commenced the administration of said estate.    The said Halcott taking the South Carolina assets and the said Allen those that were in Alabama.    5. That upon the freedom of the slaves the sole estate consisted of the landed estate hereinbefore mentioned and her proportion of the stock and implements on the said plantation, which, with the exception of the residence house

and lot described in the first paragraph of the complaint, was first chargeable with the debts of the said testatrix. 6. That this defendant is informed and believes, and so charges, that all the debts of the said estate have been paid, and that the said Allen J. Green, now deceased, and Frederick L. Green, now deceased, have received large sums of money from the said estate, which are to be accounted for by them in the final settlement of said estate, which said sums so respectively received are largely in excess of any share that they or either of them are entitled to receive out of said estate. 7. That this defendant (barring the insurance money) has only received the sum of $789.73 on account of her share in said estate, and she alleges that upon a proper statement of the accounts of the executors and the several beneficiaries with said estate, the said intestates, Allen J. Green and Frederick L. Green, will be found to have received from said estate, in excess of their shares thereof, more than the value of their respective interests in remainder in the said homestead lot described in the complaint. 8. That Halcott P. Green, who is made a party to this action as administrator of the estate of Halcott P. Green and John S. Green, both deceased, and in his own right, is also the duly appointed administrator *de bonis non, cum testamento annexo*, of the said estate of Lucy P. Green, deceased; and it is submitted that complete determination of the controversy between the plaintiffs and defendants cannot be had without making the said Halcott P. Green, as administrator *de bonis non, cum testamento annexo*, of the said estate of Lucy P. Green, a party hereto; and this defendant prays that this Court will require and direct that the plaintiffs do so make him a party. Wherefore, inasmuch as all proper parties will be then before this Court, which has full and plenary jurisdiction in the premises, and all the debts of the estate of the said Lucy P. Green have been paid, and to the end that full and complete justice may be done, and the said estate settled up, this defendant asks that the plaintiffs, Frederick L. Green, as administrator of Frederick L. Green,

deceased, and of Allen J. Green, deceased, and the defendant, Halcott P. Green, as administrator of John S. Green, deceased, and of Halcott P. Green, deceased, may account before this Court for all moneys of the said estate coming into the hands of the said intestates, and that the assets of the said estates be marshalled, and that this Court may, by its decree and judgment, fix and determine the interest of all parties in the remainder of said estate.

All the defendants having answered, the plaintiffs served upon them the following notice: "Please take notice that, on behalf of the plaintiffs, we will demur against the answers before his Honor, the presiding Judge, at the ensuing term of the Court of Common Pleas for Richland County, at the court house in Columbia, S. C., on the call of the docket, or as soon thereafter as counsel can be heard. Such demurrer being directed against so much of the answer of the said Lucy J. Green (and of the other answers referring to the same), beginning with the words, 'Further answering the said complaint,' just after the first paragraph 6 of the answer and embracing the remaining portion of said answer, such portion of the said answer being so much of it as sets up a further and affirmative defense as new matter. The ground of such demurrer being that such new matter does not contain a defense, nor does it call for the ordering of any other persons to be made parties in the said cause."

At the hearing before his Honor, Judge Buchanan, he made the following order: "This case came up before me on a demurrer by plaintiffs to the second defense pleaded by Lucy J. Green and other defendants to the complaint. The ground of the demurrer is that the new matter set up in such second defense 'does not constitute a defense, nor does it call for the ordering of any other persons to be made parties in the said cause.' The issue raised by the demurrer was fully argued by counsel for plaintiffs and defendants. It does not seem to the Court that the matters stated in such defense should properly be considered in this action. It is an action in which the complainants claim that certain pro-

perty is held by Lucy J. Green in trust under the terms of a devise in her mother's will, and praying that such trust be declared.   The defense in question seeks to have an accounting of the residuary estate disposed of by this will, and that the personal representative of that estate be brought in, so that such accounting can be had and the result of that accounting be credited upon Miss Green's liability, if any, for this trust.   This cannot be done, nor is there anything in the defense in question which would constitute a defense to the claim asserted by the plaintiff.  It is, therefore, ordered, that the said demurrer be sustained and the said defense stricken from the answer.   And on motion of the plaintiffs' counsel, it is further ordered, that it be referred to John S. Verner, Esq., as master for Richland County, to take testimony upon all the issues in the cause and report the same, together with the findings of fact thereon, to this Court."

The defendants, excepting the infant, F. G. DeSaussure, appealed from Judge Buchanan's order, and also gave notice that they would, upon demurrer to the complaint, in that it failed to state facts sufficient to constitute a cause of action, move to dismiss the complaint.   Let these grounds of appeal and also motion to dismiss appear in the report of the case.

I will first consider the appellant's motion to dismiss the complaint on their demurrer against the complaint, that it fails to set up facts sufficient to constitute a cause of action.   It seems to me that the appellants are not entitled to any decision of their grounds upon which they base this demurrer, for the simple reason that there is no authority vested in this Court to dispose of such a demurrer interposed for the first time in this Court.   The language of the Constitution clothing this Court with jurisdiction, except in certain cases falling within its original jurisdiction, is as follows, as set out in sec. 4 of art. V.: "* * * And said Court shall have appellate jurisdiction only in cases of chancery, and in such appeal, they shall review the findings of fact as well as the law. * * *" Now

it appears to me that this language admits of but one construction, and that is that in cases of chancery the Supreme Court shall *review* the findings of fact as well as the law of the Court below. It is no part of appellate jurisdiction, under which a review of findings of fact as well as the law is made, to undertake to pass upon questions which were never passed upon by the Circuit Court. This case is one in chancery. While it is true the language of the Code, as found in sec. 169, is broad, when it declares, "If no objection be taken either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the Court, and the objection that the complaint does not state facts sufficient to constitute a cause of action," still we think the meaning of the legislature must have been intended, in the light of the Constitution, to be that in the Circuit Court alone there should be no waiver, either by not interposing a formal demurrer on this account or raising the same in the answer. But even if the legislature intended otherwise by this sec. 169 of the Code, it was powerless to do so, for the Constitution is the organic law, and all the departments of the government must uphold it. I so understand the previous decisions of this Court, as found in *Miller* v. *George*, 30 S. C., 526; *Chafee* v. *Post. Tel. Co.*, 35 S. C., 372. My conclusion is, that *the four grounds of appeal* (the motion?) relating to the demurrer against complaint must be dismissed.

I will next consider the grounds of appeal from Judge Buchanan's order. First, plaintiffs' demurrer to the second defense of defendants, as set out in their answer. I cannot agree with the appellants that the pleadings show that the foundation of the plaintiffs' claim as well as those of the defendants is one and the same, to wit: the will of Mrs. Lucy P. Green, deceased. It seems to me that while the first clause of said will is that under which both parties claim their rights as life-tenant and remaindermen, respectively, yet that no question is anywhere raised, by any party to the action, that such rights as life-tenant

and remaindermen, respectively, are created under said first clause of Mrs. Green's will. The question presented by the plaintiffs is that after the entry upon the house and lot under this first clause of Mrs. Lucy P. Green's will, the life-tenant, after having procured an insurance of the dwelling house thereon against loss by fire, and after the same was accidentally destroyed by fire, and the insurance money of $3,000 was paid to the life tenant, she openly disavowed any trust relation by herself to said money, but invested and reinvested the same as her own, and has given a part of it away, and declared her purpose to treat all of it as her own. I cannot see how what may be owing by the remaindermen on account of excess of receipts over proper shares, respectively, in the estate of Mrs. Lucy P. Green, can have any relation to the relief sought against Miss Green. It is not proposed to take from her control as life-tenant one dollar of all the life estate and its alleged investments by such life-tenant. The issues are squarely made between the parties to the action, on the one side by the plaintiffs and on the other side by the defendants, as to the $3,000 insurance money. It is in no wise pertinent to this question, what may be the condition of the accounts of the residuary legatees named in Mrs. Lucy P. Green's will. The matter of such accounts does not grow out of this devise under the first clause of Mrs. Green's will. Such being my conclusion, I cannot sustain the first ground of appeal.

A conclusive answer to the second ground of appeal is that the plaintiffs do not seek any judgment for their respective shares of what they allege is an investment of a part of the life estate arising from the $3,000 insurance money. All that they ask is that such $3,000 and its investment in different property, some real and some personal property, may be impressed with the trust in favor of the remaindermen under the first clause of said will.

As to the third ground of appeal, which suggests that Allen J. Green, of Alabama, having been executor as well as one of the remaindermen, and having been paid in excess

of his share under the residuary clause of the will of Mrs.
Lucy P. Green, that those of the plaintiffs who will
take through him, as a devisee under the first clause,
must first account for such excess before they are en-
titled to the relief prayed for, I must say I cannot see its
force.   Certainly a devisee in remainder is vested with title
the moment the breath leaves the body of the testatrix, un-
less restrained by the terms of the will.   No words of restraint
appear here.   Therefore, Allen J. Green, of Alabama, as one
of the four sons of Mrs. Lucy P. Green, named in the first
clause of her will, was vested at her death with title to this
house and lot, with his right of possession and enjoyment
postponed during the lifetime of his sister, Lucy J. Green.
There is no question of vesting title to this property—I
mean the house and lot.   The question is confined to the
$3,000 received by the life-tenant as insurance on the dwell-
ing house destroyed by fire.   It is quite true, that if some of
the assets of the residuary estate were about to be paid over
to Allen J. Green's personal representative or heirs at law, the
questions raised by the appellants would be proper, but such
is not the case now before us.   This exception is overruled.

As to the fourth ground of appeal.   It is true, that a de-
murrer admits, for the time being, the truth of the alleged
facts in the answer, and that this answer does state that
Miss Green did insure her life interest in the dwelling
house, and that having so insured only her life-inter-
est, she is entitled to the proceeds of such insurance,
freed from any claims of any and all of the remain-
dermen, as her own property.   It is also true, that as between
insurance companies on the one side and of the insured on
the other side, it has been repeatedly held in this State that
fire insurance is intended to indemnify the person procuring
the insurance, and also that any one who has an insurable
interest may effect an insurance against fire of that property
in which he has such insurable interest, and that an "in-
surable interest" means that interest which, if the property
be destroyed by fire, will cause a loss to the person insuring.

But still the question remains what, under the law, is the relation of a life-tenant to the fund realized from the destruction of a dwelling house in which she has only had a life estate, where the interests of the remaindermen in such property so destroyed by fire are concerned? Any one who holds any character of trust towards the property insured, and who may effect a policy of insurance from loss by fire thereon, cannot claim such insurance money as his own. An executor of a will may effect insurance, and in the event of loss by fire, the proceeds of the policy belong to the estate confided to his care. So with an administrator of the estate of a deceased person who effects insurance on the property of his intestate's estate—the proceeds of such a policy would belong to the estate of his intestate. So with an agent who had an insurable interest and who effected a policy of insurance on property confided to his care—the proceeds of the policy belong to his principal. Such was the result in the case of *Graham* v. *Ins. Co.*, 48 S. C., 195. Mr. Graham, as agent for one G. H. Tilton, who was the owner of property, had the property insured in his own name; the proceeds were paid to G. H. Tilton, though it is proper to state that in the policy, the loss, if any, was provided to be paid to G. H. Tilton, as his interest might appear.

It will be observed, too, that this was an action on the policy itself with the insurance company. Still, as between Tilton and J. M. Graham, Tilton would have been adjudged as entitled to the proceeds of the policy, even if the same had been paid to Graham by the insurance company, whenever it was made to appear that Tilton was the owner and Graham his agent. It is to be regretted that the decisions of the courts of the different States of this Union are not in accord as to the relation a life-tenant bears to the real property which may be insured, so far as the remaindermen are concerned. All admit that if the will or deed, which creates the life estate, requires a policy of insurance to be effected by the life-tenant, the proceeds of such insurance should be used in rebuilding the property destroyed by fire, or put at

interest, and that in the latter event all the interest earned is the property of the life-tenant as long as such tenancy lasts, and after that the fund is paid over to the remainder-men. But in those instances where the will or deed creating the life estate is silent as to insurance, and the life-tenant insures the property, the courts of some of the States decide that the proceeds of such a policy may be received by the life-tenant as her own property in fee. Our own State along with others holds the doctrine that a life-tenant holds the relation of an implied or *quasi* trustee to the remaindermen, and that any proceeds of a fire policy are subject to the laws regulating trusts. *Clyburn* v. *Reynolds*, 31 S. C., 118. This case evidently impressed appellants as an obstacle in their path. Hence they first seek to differentiate their case from *Clyburn* v. *Reynolds, supra*, and failing in that, they ask this Court to overrule that case as wrong in principle. Looking to the differentation of the one case from the other, it is proper that I should briefly state what was decided in *Clyburn* v. *Reynolds, supra.* It seems that James Chesnut, jr., was both the life-tenant in the tract of land known as Sandy Hill plantation and also executor of the will under which he derived his life estate in that plantation. For several years he carried a policy of insurance against fire on the dwelling house situate on said plantation. Being in feeble health, he renewed the policy in his name, as executor. It was not certain whether he had intended to have himself named as beneficiary of the policy in his own name or in his name as executor. The dwelling house was burned just before his death, and the proceeds of the policy were paid, which proceeds were claimed by his personal representative on the one hand and the remaindermen on the other. This Court decided that it was unimportant whether he intended the policy to be taken in his own name or as executor of his father's will; and held that in case of the total destruction of the insured property, the fund from the insurance policy thereon is substituted for the property, and the life-tenant will be entitled to the interest for life, and

the fund after life-tenant's death be payable to the remaindermen—citing *Haxall, Ex'or,* v. *Shippen,* 10 Leigh, 536; *Graham* v. *Roberts,* 3 Ired. Eq., 99. This Court then proceeds to say: "In the case of *Annalley* v. *DeSaussure,* 26 S. C., 505, an insurance policy taken out by one tenant in common, was held not to inure to the benefit of the cotenant. One tenant in common is not in any sense a trustee for his cotenant, and has no insurable interest in his share of the property. A life-tenant, on the other hand, is a trustee for the remaindermen, and is certainly liable for loss by fire caused by his negligence. He ought not to be allowed to put himself in a position in which he would have no motive for proper care of the estate by having a policy of fire insurance by which, in case of loss, he could substitute the full fee simple value of the building in place of his interest for life. We, therefore, think that a sound public policy requires that any money collected by a life-tenant on a total loss by fire should be used in rebuilding or should go to the remaindermen, reserving the interest for life for the life-tenant. We quote as appropriate the language from 4 Wait Act. & Def., 22, in reference to insurance beyond the value of the interest of the insured: 'And when the insurance is beyond the value of the interest at stake, the effect is the same; for, although the amount of the loss only can be properly recovered, there will be a hope of getting more.' It would be in the nature of 'gambling.' In accord with these views is the case of *Parry* v. *Ashley,* 3 Sim., 97, and our own case of *Bath Paper Co.* v. *Langley,* 23 S. C., 129, in which the Court uses these words: 'If * * * the defendants stood in the relation of *quasi* trustees towards the plaintiffs, then the money received by them for the insurance on the house of the plaintiff belonged *ex æquo et bona* to the plaintiffs.'" The language used in this decision is plain and unmistakable. Evidently the judgment of the Supreme Court is bottomed upon the idea, that the life-tenant is an implied or *quasi* trustee for the remaindermen. Once you admit this trust relation between the life-tenant and the re-

maindermen, then the conclusion is inevitable that the life-tenant cannot protect her own interest and disregard those of her *quasi cestuis que trustent.* Strongly the Court insists upon an opposite course being against a sound public policy. Once admit that a life-tenant can claim as her own an insurance for the full value of the dwelling house, in case the same shall be destroyed by fire, the rights of the remaindermen will be jeopardized. I have given days to the study of this case, and after that study I am forced to say that, notwithstanding the evident hardship to this very remarkable lady in the management of business requiring sagacity and patience as well as great faith in the future of her native city, I have been unable to see how the decision of *Clyburn* v. *Reynolds*, *supra*, could be differentiated from the case at bar. Nor am I able to see why such a wise rule as is established by the decision in *Clyburn* v. *Reynolds*, *supra*, should be overridden or modified. It is true, some of the earlier cases do seem to limit the doctrine of *quasi* trustee in a life-tenant for the remaindermen to perishable property, but as years advance the courts are gradually brought to the view that such a relation subsists between them in the case of life insurance, and I cannot say that reflection and a careful study of the authorities and arguments have changed my opinion that *Clyburn* v. *Reynolds*, *supra*, embodies sound law.

As to the sixth ground of appeal, I cannot concur in the proposition of appellants, that when the dwelling house devised for life to the appellant, Miss Lucy J. Green, was burned by accidental fire, the proceeds of insurance became personal property, so as to pass under the residuary clause of Mrs. Green's will, and should, therefore, be paid to her executors. The house and lot were devised. If the insurance money had been applied in rebuilding the dwelling house, it would have remained real estate. Simply failing to do this, does not change the ownership or the character of the estate. This exception is overruled.

Nor, as to the seventh ground of appeal, can I agree with appellants, that as all parties interested in Mrs. Lucy P. Green's estate, which passed under her will, are now before the Court, the character of the action be changed, as prayed for by appellants. I have already indicated my views on this point, and will not attempt to add to what I have already held.

As to the eighth ground of appeal, it seems to me that the Circuit Judge was correct in his order of reference to the master to take the testimony. Now that the pleadings have been construed as applicable to the case presented by the plaintiffs—which case is met squarely by the answers of the defendants—it will be necessary to take testimony on the issues raised by the pleadings. Circuit Judges sitting as Chancellors, when the pleadings are before them for construction, are fully competent under the law to order a reference to take the testimony. It is the better plan, it seems to me, to be pursued in cases like the present.

And now it remains for me to consider the fifth exception, which I intentionally postponed for consideration out of its numerical order. I am not willing to hold that Miss Green is not entitled to be reimbursed the money she paid for the policy of insurance upon the dwelling house the year it was burned. It seems to me that she is not entitled to claim all the insurance fees she paid for ten years. Each policy, or the renewal thereof, is a separate and distinct contract. The only contract by and under which the $3,000 was paid her by the insurance companies was that of force during the year the fire occurred. In her second defense, she has put all the insurance premiums in an aggregate, and asks repayment thereof in case the $3,000 is held a trust in her hands. This was demurrable; but still I wished my views understood, for while I sustain the demurrer, yet it is with this in my mind. Amendments are readily obtained in the Circuit Courts, where good cause is shown therefor.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed, that the demurrer attempted to be set up in this Court be denied, and that the cause be remanded to the Circuit Court.

MR. JUSTICE JONES dissents.